544 A.2d 506

ESTATE OF Robert L. MYERS, Jr., Deceased.

**Appeal of Patricia MYERS, Administratrix, Appellant.**

Superior Court of Pennsylvania.

Argued March 22, 1988.

Filed July 12, 1988.

Dean R. Phillips, Philadelphia, for appellant.

G. Michael Green, Havertown, for appellee.

Before CAVANAUGH, OLSZEWSKI and MELINSON, JJ.

MELINSON, Judge:

This is an appeal from an Order of the Court of Common Pleas of Montgomery County, sitting *en banc*, sustaining Consuello Myers's exceptions to an Orphans' Court adjudication, and directing Patricia Myers, the administratrix of Robert Myers's estate, to pay Consuello Myers Forty-eight Thousand and Twenty Dollars ($48,020.00) plus interest payable from July 17, 1985. We affirm.

Robert L. Myers, Jr. (hereinafter "Robert"), the decedent, and Consuello Myers (hereinafter "Consuello"), the appellee, were married on March 17, 1951. During the course of the marriage, the decedent purchased a life insurance policy from the National Automobile Dealers Insurance Trust (NADIT) for One Hundred Thousand Dollars ($100,000.00). Consuello was named as the beneficiary. Several years after the NADIT policy became effective, Robert and Consuello separated. During their period of separation, they

executed a property settlement agreement which provided, in pertinent part:

> ... NOW THEREFORE, in consideration of the covenants and promises hereinafter mutually to be kept and performed by each party, as well as for other good and valuable consideration, it is agreed as follows:
>
> 1. Husband relinquishes his inchoate intestate rights in the estate of wife and wife relinquishes her inchoate intestate right in the estate of husband.
>
> 2. Husband upon the execution of this agreement agrees to pay wife the total sum of One Hundred Twenty Three Thousand One Hundred (123,100.00) Dollars to settle and determine the obligation of support and maintenance of the wife by the husband, which will be paid as follows:
>
> b. The sum of One Hundred Fifty (150.00) Dollars per week for a period of fifty-two (52) weeks from the date of this agreement, and each year thereafter for a period of nine years the weekly support payments shall increase by the sum of Fifteen (15.00) Dollars per week each year for a total period of ten (10) years or Five Hundred Twenty (520) weeks.
>
> c. Should wife die or remarry during the aforementioned ten (10) year period over which support payments are to be made then all payments shall cease as of the date of death or remarriage of the wife. *If husband should die during the term of this Agreement, then the husband's estate will be responsible for the balance of payments hereunder under the same terms and conditions.* (emphasis added).

Robert negotiated this property settlement agreement with the benefit of counsel. The NADIT policy is not mentioned within the agreement. In April of 1979, following execution of this agreement, Robert and Consuello divorced. Subsequently, Robert married Patricia Myers (hereinafter "Patricia"), the appellant at bar. Although the property settlement agreement did not require Robert to retain Consuello as the named beneficiary on the NADIT

policy, he never changed the beneficiary on the policy. On May 1, 1985, Robert died. Consuello was still the named beneficiary on the NADIT policy. At the time of his death, Robert owed Consuello Forty-eight Thousand and Twenty Dollars ($48,020.00) in support and maintenance payments pursuant to the property settlement agreement.

Consuello filed an objection to the final account of the estate of Robert, claiming that the estate owed her the unpaid balance of the property settlement agreement. Following a hearing, an adjudication was entered by a Chancellor in Orphans' Court, dismissing the claim of Consuello. The Chancellor held that the proceeds of the NADIT policy, although non-probate assets, represented wealth which the decedent had acquired in his lifetime, and which should be applied to pay off the liability for support and maintenance to Consuello. Consuello filed timely exceptions to this ruling. Argument upon the exceptions was held before the Court of Common Pleas of Montgomery County, sitting *en banc*. Following argument, an Opinion and Order Sur Exceptions to Adjudication was entered, reversing the Chancellor's adjudication and ordering Patricia, as Administratrix, to pay Consuello the balance of the property settlement agreement, plus interest. The court supported this determination by reasoning that the NADIT policy was a contract separate from, and unrelated to, the property settlement agreement between Robert and Consuello; therefore, the policy proceeds could not be applied to satisfy the estate's support obligation. This appeal timely followed.

One issue has been raised for our consideration: whether the *en banc* court below erred in refusing to apply a portion of Robert's life insurance policy proceeds toward his estate's unsatisfied obligation under a property settlement contract. With respect to this issue, Patricia contends that "where a creditor ex-wife is the beneficiary of a life insurance policy on the life of the debtor ex-husband, and the proceeds exceed the amount of the debt, a court of equity should treat the debt as satisfied." She further argues that the provision relied upon by Consuello which makes the

decedent's estate responsible for the support obligation was intended to guarantee a source of funds for payment of the support obligation, and not to permit double recovery where the debt was satisfied from another source. We disagree and affirm the decision of the *en banc* court.

 Initially, we note that a husband may assume a contractual obligation to his wife that will survive him and bind his estate. *Estate of Mathay*, 463 Pa. 486, 345 A.2d 623 (1975). Here, the face of the instrument clearly evinces an intent to have the estate of Robert fulfill his support obligation if he were to die during the term of the agreement. Even if we, as a court, wanted to, we could not alter the terms of this support agreement between Consuello and Robert. *See VanKirk v. VanKirk*, 336 Pa.Super. 502, 485 A.2d 1194 (1984). Thus, the property settlement agreement at bar was a valid contract that properly extended Robert Myers's obligation to his estate.

 Furthermore, we are in agreement with the *en banc* Common Pleas Court that the NADIT insurance policy is a document unrelated to the property settlement agreement, and should not affect the unpaid balance of the support agreement. The proceeds of an insurance policy naming a third person as beneficiary belong exclusively to that person as an individual, and do not constitute part of the insured's estate. *Estate of Stalnaker*, 330 Pa.Super. 399, 479 A.2d 612 (1984); *see also Ervin Estate*, 430 Pa. 431, 243 A.2d 420 (1968).[1] In the case at bar, the NADIT policy was purchased during the course of the marriage between Consuello and Robert. They did not separate until several years after it became effective. Robert did not die until six years after his divorce from Consuello. He had

1. In *Ervin*, the issue was whether a separation agreement between husband and wife terminated at the husband's death, or required the estate to continue support payments. There, the court found that "[t]he only circumstance that could possibly be viewed as supporting an intention that payments terminate at the husband's death would be paragraph 6, providing that the husband maintain $35,000 of life insurance in favor of appellant." *Ervin*, 430 Pa. at 436, 243 A.2d 420. Nonetheless, the court held that there was no reason why the life insurance could not be *in addition to* the payments for spousal support.

356

been married to Patricia for several years prior to his death. Clearly, the decedent had ample time and opportunity to remove Consuello as the named beneficiary on the NADIT policy and to substitute another name.

This conclusion is buttressed by the fact that Robert was represented by counsel at the support and maintenance negotiations following his separation from Consuello. The agreement that was reached following these negotiations provided for over One Hundred and Twenty–Three Thousand Dollars ($123,000.00) to be paid to Consuello. The payment plan was detailed and complex. Obviously, this agreement was not taken lightly. A thorough examination of Robert's financial status, by both Mr. Myers and his counsel, surely was undertaken. Thus, the parties to the negotiations had the opportunity to insert a clause in the property settlement agreement stating that any unpaid obligation for maintenance and support following Robert's death was to be deducted from the NADIT policy, if that was their intention. They did not do so. Accordingly, we find that Consuello Myers is entitled to the balance due under the terms of the property settlement agreement, plus interest, as found by the *en banc* court below.

Order affirmed.