612 A.2d 1360

**Janet Kirby McMAHON, a/k/a Janet K. Marshall**

**v.**

**Robert M. McMAHON, Appellant.**

Superior Court of Pennsylvania.

Argued Sept. 12, 1991.

Filed July 24, 1992.

---

Michael S. Dinney, Bryn Mawr, for appellant.

Lawrence F. Flick, Norristown, for appellee.

Before WIEAND, McEWEN, OLSZEWSKI, DEL SOLE, BECK, TAMILIA, POPOVICH, JOHNSON and HUDOCK, JJ.

JOHNSON, Judge.

Robert M. McMahon (Husband) appeals from an order which denied the petition to terminate his obligation to provide alimony, health insurance coverage, and a leased automobile to Janet Kirby McMahon (Wife). We are asked to determine whether Wife's entitlement to these benefits terminated upon her remarriage. We are also asked to determine whether 401.1(c) of the Divorce Code, now 23 Pa.C.S. § 3105(c), precluded modification of these agreed-upon benefits even though that subsection became effective subsequent to the date(s) of the agreements.

We find that the trial court did not err in concluding that the agreements between Husband and Wife were incorpo-

rated into, but did not merge with, any of the decrees or orders of the court. The agreements were, therefore, properly construed in accordance with the rules of law generally applicable to contract construction. We also conclude that the trial court properly recognized the prohibition against modification found in subsection 3105(c) of the Divorce Code. Accordingly, we affirm.

The parties were married in 1976. Three children were born of the marriage, in 1980, 1983 and 1986 respectively. The parties separated on September 10, 1986, when Husband left Wife and the children. During 1987, the parties entered into four separate agreements regarding alimony, child support, custody and distribution of the marital property. The first agreement, dated March 31, 1987, provided for alimony, child support, and medical insurance coverage until the parties' youngest child "reaches the age of twenty-one, is emancipated or finishes college whichever occurs last." This agreement was amended by the parties on December 4, 1987 to include a provision whereby Husband agreed to provide Wife with a leased automobile and all related insurance and maintenance costs "for as long as he [Husband] is obligated to pay support."

Wife filed a complaint in divorce on December 8, 1988, in which she requested that the court incorporate the March 31, 1987 agreement, as amended December 4, 1987, into the final decree of divorce. The parties subsequently entered into a stipulation on March 30, 1989 which provided for the agreement to "be incorporated into but not merge with the divorce decree entered." The final decree of divorce, entered April 7, 1989, provided in part as follows:

AND IT IS FURTHER ORDERED, ADJUDGED AND DECREED,.... that the terms, provisions and conditions of.... certain property settlement agreement[s] between the parties dated MARCH 31, 1987,.... [and] DEC[.] 4, 1987 [are] hereby incorporated into this Decree and Order by reference as fully as though the same were set forth at length. Said agreement shall not merge with but shall survive this Decree and Order.

Wife remarried on June 25, 1989. Five days later, Husband petitioned the court to terminate his obligation to provide alimony, health insurance coverage and the leased automobile to (his former) Wife. At a hearing on the petition, the Master found the property settlement agreement had not merged into the divorce decree and was, therefore, not subject to modification. Husband filed exceptions and requested a hearing *de novo*. The Honorable William T. Nicholas, after examining the entire record and receiving oral argument, dismissed the exceptions by order on March 27, 1990, prompting this appeal.

We first examine Husband's contention that Wife's remarriage operated to terminate Husband's obligations to provide alimony and other benefits. He directs our attention to Section 501 of the Divorce Code of 1980, now 23 Pa.C. § 3701, which provides in part:

§ 3701.  Alimony

. . . .

(e) Modification and termination.—An order entered pursuant to this section is subject to further order of the court upon changed circumstances of either party of a substantial and continuing nature whereupon the order may be modified, suspended, terminated or reinstituted or a new order made. Any further order shall apply only to payments accruing subsequent to the petition for the requested relief. Remarriage of the party receiving alimony shall terminate the award of alimony.

(f) Status of agreement to pay alimony.—Whenever the court approves an agreement for the payment of alimony voluntarily entered into between the parties, the agreement shall constitute the order of the court and may be enforced as provided in section 3703 (relating to enforcement of arrearages).

23 Pa.C.S. §§ 3701(e), (f). Husband seeks to argue that since the Divorce Code provides that alimony automatically terminates as a matter of law upon remarriage, it was not necessary for the parties to provide for same unless they specifically intended that alimony would continue after re-

marriage. In advancing this contention, Husband fails to distinguish an award of alimony by order of court from alimony received under an agreement between the parties.

Wife correctly directs our attention to *Sonder v. Sonder*, 378 Pa.Super. 474, 549 A.2d 155 (1988), wherein this court, sitting en banc, recognized the distinction and stated:

> We, therefore, hold that any agreement which speaks of incorporation but rejects merger was intended by the parties not to be brought under the provisions of sections 401, 501(e) and (f) [now 23 Pa.C.S. §§ 3701(e) and (f) ] and 503 for the enforcement of separation agreements. Only by an Order which does not reject merger, or required court enforcement of the agreement, does it become part of the decree and have the effect of an Order. By renouncing merger and failing to have language in the decree requiring enforcement as a court Order, the contract survives.

378 Pa.Super. at 493, 549 A.2d at 165. *See also, D'Huy v. D'Huy*, 390 Pa.Super. 509, 568 A.2d 1289 (1990); *Bell v. Bell*, 390 Pa.Super. 526, 568 A.2d 1297 (1990); *compare Hollman v. Hollman*, 347 Pa.Super. 289, 500 A.2d 837 (1985) *rev'd and remanded on other grounds* 515 Pa. 288, 528 A.2d 146 (1987).

In this case, the parties willingly stipulated that the property settlement agreement would survive the divorce decree as a separate contract. The divorce decree states on its face that the agreement is incorporated by reference but does not merge with it. As such, we cannot interpret this agreement as an order of court, as Husband suggests, but we must respect the agreement as a separate and independent contract which survived the divorce decree. Here, Wife's right to payment is not based on an award but is instead based on the signature of Husband to a contract. *Stanley v. Stanley*, 339 Pa.Super. 118, 488 A.2d 338 (1985). When an agreement is entered for a specific amount for a stated period of time, without conditions for modifications or termination, it cannot be presumed that the parties intended the statutory bar or termination sections to apply.

*Woodings v. Woodings,* 411 Pa.Super. 406, 601 A.2d 854 (1992). This contract is therefore not subject to the provisions of 23 Pa.C.S. § 3701(e) and (f) which require automatic termination of court-ordered alimony upon remarriage by the alimony recipient.

■ We now examine the contract itself to determine if the parties provided for the termination of alimony upon Wife's remarriage. In the present case, there has been no allegation of fraud or that the agreement was other than freely negotiated between the parties. Absent fraud, misrepresentation, or duress, spouses should be bound by the terms of their agreements. *Simeone v. Simeone,* 525 Pa. 392, 581 A.2d 162 (1990); *Frank v. Frank,* 402 Pa.Super. 458, 587 A.2d 340 (1991).

The agreement states in pertinent part:

Husband will draw a gross salary of $1,750.00 per week commencing April 3, 1987. From said salary of $1,750.00 per week, $791.00 shall be paid to wife and approximately $384.00 net will be left for husband. Of that which is to be paid to wife fifty percent shall be deemed alimony and 50% shall be deemed child support and shall be paid to wife by husband until the youngest living child reaches the age of twenty-one, is emancipated or finishes college whichever occurs last.

Here, the parties were free to include conditions in the agreement under which alimony payments would be terminated. In fact, the parties, in one sentence, provided for the termination of both alimony and child support payments to Wife when the parties' "youngest living child reaches the age of twenty-one, is emancipated or finishes college whichever occurs last." While the agreement is silent as to any other circumstances which would cause Husband's payments to Wife to cease, it is clear that the parties could have enumerated other conditions terminating such payments, if they so chose.

■ When construing agreements involving clear and unambiguous terms, this Court need only examine the writ-

ing itself to give effect to the parties' understanding. *Van-Kirk v. VanKirk*, 336 Pa.Super. 502, 505, 485 A.2d 1194, 1196 (1984). The Court must construe the contract only as written and may not modify the plain meaning of the words under the guise of interpretation. *Trumpp v. Trumpp*, 351 Pa.Super. 205, 209, 505 A.2d 601, 603 (1985). Upon examination of the agreement, we find the terms of the agreement clearly indicate that payments from Husband for alimony and child support will cease only upon the happening of one of the three contingencies enumerated above. There is no indication on the face of the agreement that the parties intended remarriage of the Wife to terminate Husband's payments and we are not free to construe the agreement to include such terms. We accordingly find no error in the trial court's denial of Husband's petition to terminate alimony.

Next, Husband contends that the trial court erred in its application of 23 Pa.C.S. § 3105(c) because the parties entered into their property settlement agreement prior to the date that the Amendment was enacted. Husband argues that the trial court's application of § 3105(c) was "retroactive" and therefore improper. We disagree and find that the trial court properly applied § 3105(c) and concluded that the support agreement between the parties was not modifiable.

23 Pa C.S. § 3105(c) provides:

(c) **Certain provisions not subject to modification.—** In the absence of a specific provision to the contrary appearing in the agreement, a provision regarding the disposition of existing property rights and interests between the parties, alimony, alimony pendente lite, counsel · fees or expenses shall not be subject to modification by the court.

Husband maintains that the trial court applied § 3105(c) "retroactively" and this resulted in impairment of his substantive contractual rights. We conclude that in the present case, the application of § 3105(c) does not implicate issues of retroactivity. While there is a presumption

against the retroactive application of statutes affecting substantive rights, a law is only retroactive in its application when it relates back and gives a previous transaction a legal effect different from that which it had under the law in effect when it transpired. 1 Pa.C.S. § 1926 (Purdon Supp1991); *R & P Services v. Commonwealth Department of Revenue*, 116 Pa.Commw. 230, 541 A.2d 432 (1988). Substantive rights are those affected when the application of the statute imposes new legal burdens on past transactions or occurrences. *DeMatteis v. DeMatteis*, 399 Pa.Super. 421, 582 A.2d 666 (1990); *Department of Labor and Industry, Bureau of Employment Security v. Pennsylvania Engineering Corporation*, 54 Pa.Commw. 376, 421 A.2d 521 (1980). However, where no substantive right or contractual obligation is involved, an act is not retroactively construed when applied to a condition existing on its effective date even though the condition results from events which occurred prior to that date. *Brangs v. Brangs*, 407 Pa.Super. 43, 595 A.2d 115 (1991). *Creighan v. Pittsburgh*, 389 Pa. 569, 132 A.2d 867 (1957).

This Court has previously addressed this issue in *DeMatteis v. DeMatteis*, 399 Pa.Super. 421, 582 A.2d 666 (1990). In that case, the appellant successfully argued that when the trial court modified an existing support agreement, it had acted impermissibly under § 3105(c), despite the fact that the agreement was signed prior to the date the Amendment was enacted. *DeMatteis*, 399 Pa.Super. at 434, 582 A.2d at 672. There, we held that § 3105(c) applied to prevent the modification of support agreements, even when the agreement predated the statute. *Id.* This Court found that rather than altering the contractual rights and obligations of the parties, the application of § 3105(c) served to preserve and protect the contract rights of the parties as they intended at the time of the signing of the agreement. *Id.*

In *Jackson v. Culp*, 400 Pa.Super. 519, 583 A.2d 1236 (1990), this Court again endorsed the applicability of § 3105 in a factual situation similar to the one in the present case.

In that case, this Court applied the enforcement procedures found in § 3105(a) to a pre–1988 support agreement because such application would not alter the obligations of the parties. *Id.* There, we stated that the 1988 Amendment neither adds to nor subtracted from the substantive rights of the parties and as such is properly applied to agreements entered into by the parties prior to 1988. *Id.*, 400 Pa.Superior Ct. at 523, 583 A.2d at 1238. In *Jackson,* we concluded that "[t]he 1988 Amendment to the Divorce Code [§ 3105] allows *enforcement but not modification* of an unmerged MSA [marital settlement agreement] under the Code." *Id.*, 400 Pa.Superior Ct. at 523, 583 A.2d at 1238. (emphasis in original).

While § 3105(c) was a newly enacted amendment in 1988, it was merely a codification of the existing Pennsylvania law. Under our common law, where a property settlement agreement is entered and is thereafter incorporated but not merged into the divorce decree, it remains a contract between the parties, in which the court has no involvement. *Sonder,* 378 Pa.Super. at 488, 549 A.2d at 163; *VanKirk,* 336 Pa.Super. at 506, 485 A.2d at 1197; *Litwack v. Litwack,* 289 Pa.Super. 405, 433 A.2d 514 (1981). This means that without proper authorization on the face of the agreement, such contracts are not modifiable unilaterally by a court. *Brown v. Hall,* 495 Pa. 635, 435 A.2d 859 (1981); *Sonder,* 378 Pa.Super. at 489, 549 A.2d at 162. Yet, if the agreement provides for court-ordered modification, a court under § 3105(c) remains free to modify the agreement. Through its application of § 3105(c), the trial court was following a statutory mandate which was based on the common law as it had developed up until the time of the Amendment. *See Stanley v. Stanley,* 339 Pa.Super. 118, 488 A.2d 338 (1985); *VanKirk v. VanKirk, supra.; Litwack v. Litwack, supra.*

In the present case, the support agreement was not merged into the divorce decree but was merely incorporated into it. The agreement therefore survived as a separate contract. The contract had no provision which permitted a court to modify it. When the trial court examined this

agreement, and applied § 3105(c), it properly concluded that it was unable to modify the contract. If the trial court had applied existing case law, rather than the statute, to determine whether it could modify the contract, the result would have been the same. *See e.g. Bell*, 390 Pa.Super. at 530, 568 A.2d at 1299; *D'Huy*, 390 Pa.Super. at 517, 568 A.2d at 1293; *Kleintop v. Kleintop*, 291 Pa.Super. 491, 436 A.2d 223 (1981).

Here, the trial court, rather than applying § 3105(c) retroactively, merely followed the legislative intent articulated in the Amendment, which instructed courts to apply it immediately. In this case, Husband has not been deprived of substantive rights nor have different legal burdens been imposed upon him through the application of § 3105(c). Husband and Wife continue to enjoy the same rights under the contract as they did at the time of its signing. They also enjoy the same rights as they would if the trial court were constrained to apply the law as it existed before the 1988 Amendments to the Divorce Code. While Husband contends that he is deprived of his contract rights through the application of § 3105(c), he fails to direct us to any authority which indicates that absent the application of the Amendment, his obligations under the contract would have been subject to unilateral termination by the trial court. We therefore find that § 3105(c) controls and that the trial court properly applied the Amendment in its determination that the agreement was not subject to modification.

Accordingly, for the foregoing reasons, we affirm the order of the trial court.

Order Affirmed.

TAMILIA, J., files a concurring and dissenting opinion, in which OLSZEWSKI, J., joins.

WIEAND, J., files a dissenting opinion, in which DEL SOLE, J., joins.

TAMILIA, Judge, concurring and dissenting:

I concur in the result reached by the majority as I believe the agreement entered by the parties clearly established an intent to provide support for the children and alimony for the wife until the youngest child was emancipated and/or completed college training. It is to be presumed that the parties entered into the agreement as equals, fully represented by counsel and with full knowledge of both statutory and common law. Despite provisions in the Divorce Code, 23 Pa.C.S. § 3706, Bar to alimony, which prohibits *an award* of alimony where the petitioner cohabits with a person of the opposite sex (here, remarriage) and 23 Pa.C.S. § 3701, Alimony, subsection (e), Modification and termination, which states in pertinent part: "Remarriage of the party receiving alimony shall terminate the award of alimony[,]" the agreement is binding and is not subject to these sections since the agreement does not constitute an *award* of alimony. *DeMasi v. DeMasi*, 366 Pa.Super. 19, 530 A.2d 871 (1987), *alloc. denied*, 517 Pa. 631, 539 A.2d 811 (1987), held that the wife's remarriage did not effect an award of alimony pendente lite although 23 P.S. § 507 (now section 3706) precluded any award of alimony. In *D'Huy v. D'Huy*, 390 Pa.Super. 509, 568 A.2d 1289 (1990), *alloc. denied*, 525 Pa. 646, 581 A.2d 572 (1990), monthly payments toward alimony were not terminated upon remarriage of the wife as they were construed to be part of property distribution. More to the point is *Britton v. Britton*, 400 Pa.Super. 43, 582 A.2d 1335 (1990), which held a separation agreement, which made no provision for cessation of alimony payments upon cohabitation with the opposite sex by the recipient spouse, was not controlled by section 507 (now section 3706). This Court held:

Clearly, the rights and obligations of the parties in many areas affected by the dissolution of a marriage can be determined and altered by private agreement despite the existence of specific statutory provisions which would operate in the absence of such agreements. For instance, while this Court has found that the Divorce Code does not

authorize the award of alimony to extend past the payor's death, the parties may voluntarily agree otherwise. *Chaney v. Chaney,* 343 Pa.Super. 77, 86–87, 493 A.2d 1382, 1387 (1985). *See also Myers v. Myers,* 375 Pa.Super. 351, 544 A.2d 506, 508 (1988) (parties can contract to have support obligation of payor spouse survive him and bind the estate). Likewise, separation agreements which make no provision for the cessation of alimony payments upon cohabitation with the opposite sex by the recipient spouse cannot be avoided by the payor spouse despite the fact that the Divorce Code would have "awards of alimony" terminate upon such an occurrence. 23 Pa.C.S.A. § 507 (Purdon Supp.1990). Moreover, although the Divorce Code clearly manifests a policy against "double support" in § 507, that policy will not overcome the validity of an otherwise unimpeachable separation agreement. *See VanKirk v. VanKirk,* 336 Pa.Super. 502, 504–06, 485 A.2d 1194, 1196 (1984); *Litwack v. Litwack,* 289 Pa.Super. 405, 409–11, 433 A.2d 514, 516 (1981).

. . . . .

These cases reflect the recognition that generally parties have great latitude in directing the resolution of disputes upon the dissolution of marriage. Assuming that there is no evidence of fraud or overreaching, courts are extremely tolerant of a variety of separation and other agreements affecting marriage and divorce.

*Id.,* 400 Pa.Superior Ct. at 1338, 582 A.2d at 1338.

The majority is correct in holding that the separation agreement in this case, pursuant to *Sonder v. Sonder,* 378 Pa.Super. 474, 549 A.2d 155 (1988), was not merged with the divorce decree and stands as a contract which is enforceable independent of and unaffected by the Divorce Code. As such it may not be altered or modified except by agreement of the parties.

Having said the above, it becomes evident that the majority went beyond what was necessary or permissible in deciding that 23 Pa.C.S. § 3105, Effect of agreement between

parties, was applicable. That section, in pertinent part, provides:

(c) **Certain provisions not subject to modification.**— In the absence of a specific provision to the contrary appearing in the agreement, a provision regarding the disposition of existing property rights and interests between the parties, alimony, alimony pendente lite, counsel fees or expenses shall not be subject to modification by the court.

In this case, as in *DeMatteis v. DeMatteis*, 399 Pa.Super. 421, 582 A.2d 666 (1990), the Court relies on section 3105(c) when it is not relevant because the unmerged agreement does not rely upon the Divorce Code for its efficacy, but on the law of contract. Even if the contract was merged into the decree, section 3105(c) would not apply because of the statutory prohibition contained in the Divorce Code, which rules out the majority's application of statutory construction in determining the retroactive nature of an amendment. The Statutory Construction Act, 1 Pa.C.S. § 1921, Legislative intent controls, provides:

(a) The object of all interpretation and construction of statutes is to ascertain and effectuate the intention of the General Assembly. Every statute shall be construed, if possible, to give effect to all its provisions.

(b) When the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit.

*Id.* At the time the agreement went into effect (1987), section 3105(c) (added February 12, 1988 as section 401.1) was not in effect. Pursuant to 23 P.S. § 103, Construction, subsequent amendments to the Divorce Code could not alter the agreement of the parties entered into before the amendment. This is hornbook law and simply affirms the sanctity of contracts protected by our Federal and State Constitutions. My dissent filed in *DeMatteis, supra,* is precisely on point and is set forth as follows:

*Sonder v. Sonder,* 378 Pa.Super. 474, 549 A.2d 155 (1988), en banc, as acknowledged by the majority, required that

this agreement be enforced as a contract but it then goes on to conclude, unnecessarily, for the purpose of the result, that section 401.1 may be retroactively applied to an agreement entered into prior to the amendments of 1988. The agreement provided that it could not be unilaterally modified and since it retained its identity as a contract, it could not be modified as a court Order by the court. The discussion by the majority concerning the retroactivity of section 401.1(c) is, therefore, irrelevant. In addition, it is erroneous since an amendment to the Divorce Code which follows the effective date of an agreement may not apply to that agreement. Contracts have been held inviolate by the federal and state constitutions and may not be altered by legislative provisions which would, in effect, deprive the parties of property rights without due process of law. In *Nessa v. Nessa,* [399] Pa.Super. [59,] 581 A.2d 674 (1990), we applied *Sonder, supra,* to hold that a contract such as this was not to be subject to alteration by Order of court. There, we also held:

> [T]his agreement is not affected by amendment to the Divorce Code § 401.1(c), added in 1988, ... as the agreement predated the amendment. The Divorce Code at 23 P.S. § 103 **Construction,** provides:
>
> . . . .
>
> *This act shall not affect any marital agreement executed prior to the divorce agreement executed prior to the effective date of this act or any amendment or modification thereto.*

*Id.,* 399 Pa.Superior Ct. at 65, n. 2, 581 A.2d at 676, n. 2. While the result of the majority is correct, the discussion regarding section 401.1(c) is in error, unnecessary for the result, and in direct conflict with *Sonder.* I, therefore, dissent to the discussion and analysis concerning the retroactive effect of section 401.1(c).

*Id.,* 399 Pa.Superior Ct. at 437, 582 A.2d at 674 (emphasis added).

If the clear unambiguous terms of 23 P.S. § 103 were not sufficient, 1 Pa.C.S. § 1926, Presumption against retroac-

tive effect, would be controlling. "No statute shall [be] construed to be retroactive unless clearly and manifestly so intended by the General Assembly." *Id.* The majority's adoption of the rationale of the majority in *DeMatteis* on the retroactivity issue, in the face of the clear prohibition against retroactivity provided by section 103 of the Divorce Code, the clear legislative mandate requiring construction against retroactivity by section 1921 of the Statutory Construction Act because no ambiguity exists in section 103, and the presumption against retroactivity contained in section 1926 of the Statutory Construction Act, clearly establishes the error of that holding.

In summation, the majority in applying its section 3501(c) rationale is internally inconsistent because, pursuant to *Sonder*, the Divorce Code does not apply to this agreement and is in error because it may not apply section 3501(c) retroactively as the Divorce Code prohibits such an application. Because it is likely there are hundreds of such preamendment agreements in effect, our correct resolution of this issue at this time is essential to provide the proper interpretation of those agreements for use by the bar, trial bench and appellate courts. I, therefore, dissent to the discussion or application of section 3501(c) to this case.

WIEAND, Judge, dissenting.

I respectfully dissent. Neither the statutory law nor the parties' agreement in this case warrants a continuation of alimony payments to wife-appellee following her remarriage.

The Divorce Code, at 23 Pa.C.S. § 3701(e) and (f) provides as follows:

(e) **Modification and termination.**—An order entered pursuant to this section is subject to further order of the court upon changed circumstances of either party of a substantial and continuing nature whereupon the order may be modified, suspended, terminated or reinstituted or a new order made. Any further order shall apply only to payments accruing subsequent to the petition for the

requested relief. Remarriage of the party receiving alimony shall terminate the award of alimony.

**(f) Status of agreement to pay alimony.**—Whenever the court approves an agreement for the payment of alimony voluntarily entered into between the parties, the agreement shall constitute the order of the court and may be enforced as provided in section 3703 (relating to enforcement of arrearages).

Pursuant to these provisions, an order requiring the payment of alimony, whether entered pursuant to agreement of the parties or after an evidentiary hearing, is enforceable by any of the means provided by 23 Pa.C.S. § 3703, including attachment and contempt. An order awarding alimony, however, terminates upon remarriage of the party receiving alimony. Upon remarriage of the party receiving alimony, all vestiges of the prior marital relationship have come to an end and a new relationship, with all the rights and duties inherent therein, has begun.

I am in full agreement with the majority that the parties may contract for the payment of alimony or spousal support even after the party receiving such payments has remarried. Before an agreement for the payment of alimony can survive remarriage of the party receiving such payments, however, such an intent must appear clearly and unambiguously. An arrangement contrary to the policy clearly expressed and adopted by the legislature at 23 Pa.C.S. § 3701(e) should not readily be inferred from imprecise contract language. Where an agreement is silent with respect to whether payments of alimony shall survive the remarriage of the party receiving alimony, the law may assume that the parties intended to contract consistently with policy expressed by the legislature.

As a general rule, the interpretation of a written contract is a matter of law to be made by a court. *Hutchison v. Sunbeam Coal Corp.*, 513 Pa. 192, 201, 519 A.2d 385, 390 (1986); *Standard Venetian Blind Co. v. American Empire Ins. Co.*, 503 Pa. 300, 304, 469 A.2d 563, 566 (1983); *Kardibin v. Associated Hardware*, 284 Pa.Super. 586, 595,

426 A.2d 649, 654 (1981). In making such an interpretation, the court's paramount concern must be to effectuate the intent of the parties. *Commonwealth, Department of Transportation v. Manor Mines, Inc.*, 523 Pa. 112, 119, 565 A.2d 428, 432 (1989); *Lower Frederick Township v. Clemmer*, 518 Pa. 313, 329, 543 A.2d 502, 510 (1988); *Warren v. Greenfield*, 407 Pa.Super. 600, 606–607, 595 A.2d 1308, 1311 (1991). This intent is to be gleaned from the unambiguous words which the parties have chosen to express their agreement. As expressed in *Marcinak v. Southeastern Greene School Dist.*, 375 Pa.Super. 486, 544 A.2d 1025 (1988):

> The intent of the parties to a written contract is to be regarded as being embodied in the writing itself, and when the words are clear and unambiguous, the intent is to be discovered only from the express language of the agreement. *Estate of Breyer*, 475 Pa. 108, 379 A.2d 1305 (1977). When the words of the contract are unequivocal, it speaks for itself and a meaning cannot be given to it other than that expressed, and there is no need to refer to extrinsic aids or evidence to determine the intentions of the parties. *East Crossroads Center, Inc. v. Mellon–Stuart Co.*, 416 Pa. 229, 205 A.2d 865 (1965).

*Id.*, 375 Pa.Superior Ct. at 492, 544 A.2d at 1027–1028. See also: *Walton v. Philadelphia Nat'l Bank*, 376 Pa.Super. 329, 339, 545 A.2d 1383, 1388 (1988); *Vankirk v. Vankirk*, 336 Pa.Super. 502, 505, 485 A.2d 1194, 1196 (1984). Moreover, a written instrument must be examined as a whole. *Marcinak v. Southeastern Greene School Dist., supra* 375 Pa.Super. at 491, 544 A.2d at 1027; *Stern v. Vic Snyder, Inc.*, 325 Pa.Super. 423, 429, 473 A.2d 139, 142 (1984). Similarly, when the parties' agreement involves several written instruments, they are to be construed together as a whole. *International Milling Co. v. Hachmeister, Inc.*, 380 Pa. 407, 417–418, 110 A.2d 186, 191 (1955).

In the instant case, the parties' original agreement required husband to make weekly payments to wife in the amount of $791.00. With respect thereto, the parties specifically stated: "Of that which is to be paid to wife, fifty

percent shall be deemed alimony and 50% shall be deemed child support and shall be paid to wife by husband until the youngest living child reaches the age of twenty-one, is emancipated or finishes college whichever occurs last." By this language the parties identified the time when husband's duty to pay child support should terminate and come to an end. However, there was nothing in the agreement expressing an intent that husband's obligation to pay alimony was to end simultaneously with the termination of husband's duty to pay child support. Presumably, therefore, payments of alimony were to continue so long as wife needed such payments to assist her in supporting herself. This need may have continued indefinitely for many years. It may have continued as long as she lived. The need clearly came to an end, however, when the wife remarried.

In *Price v. Confair*, 366 Pa. 538, 79 A.2d 224 (1951), the Supreme Court stated:

"[C]ontracts which do not fix a definite time for the duration of the relationship which they create are sometimes construed as providing for a reasonable time or some particular period inferred from the nature and circumstances of the undertaking. Illustrations are to be found in *Weidman v. United Cigar Stores Co.*, 223 Pa. 160 [72 A. 377], *Nolle v. Mutual Union Brewing Co.*, 264 Pa. 534 [108 A. 23], and *Rossmassler v. Spielberger*, 270 Pa. 30 [112 A. 876]; see also 4 Williston on Contracts (rev. ed.), section 1027A(3), p. 2852."

*Id.* at 542–543, 79 A.2d at 226, quoting *Slonaker v. P.G. Publishing Co.*, 338 Pa. 292, 296, 13 A.2d 48, 51 (1940). See also: *Thomas v. Thomas Flexible Coupling Co.*, 353 Pa. 591, 597, 46 A.2d 212, 215 (1946); *Straup v. Times Herald*, 283 Pa.Super. 58, 68–69, 423 A.2d 713, 718–719 (1980). I would hold that under the circumstances of this case, a terminus of husband's obligation to pay alimony to his former wife was intended by the parties to be the wife's remarriage.

This interpretation is confirmed by the sentence in the parties' agreement which follows the sentence requiring the

payment of alimony. It is there provided that husband is "to provide Blue Cross and Blue Shield and major medical coverage ... during the period husband is obligated to pay support for wife and/or children." This suggests that the parties differentiated between spousal support or alimony, on the one hand, and husband's duty to provide child support, on the other. It negates any concept that alimony and child support were to be so linked together as to share the same terminus.

Husband's contractual obligations to pay alimony and child support, the parties stipulated, were to be "embodied" in and become a part of a support order. Pursuant thereto, an agreed order was entered which "embodied" the agreement of the parties.

An action for divorce was subsequently commenced, and an amended order was made part of a decree in divorce entered on April 7, 1989. By this agreement, husband was also to provide wife with a leased automobile and related insurance and costs of maintenance "for as long as he is obligated to pay support." This amended agreement did not purport to change the amount of alimony to be paid or the duration thereof. It merely spoke to the additional requirement of a leased vehicle "for as long as [husband] is obligated to pay support."

A careful reading of the parties' agreement suggests that they loosely equated alimony with spousal support and spoke interchangeably of the two. In doing so, however, they clearly distinguished alimony and/or spousal support from husband's duty to provide child support. Although specifically defining the duration of child support, at no time or place in their agreement did the parties suggest expressly or by inference that husband's duty to pay alimony was to continue after wife's remarriage.

I would hold, therefore, that the appellant-husband's obligation to pay alimony came to an end when his former wife remarried. I reach this result because of the clear expression of legislative intent found at 23 Pa.C.S. § 3701(e) and also because my interpretation of the parties' agreement

confirms that the parties did not contemplate a requirement in excess of that provided by statute. Specifically, the agreement contained no provision that husband should continue to pay alimony even after wife remarried. I would reject any rule which suggests that an agreement to pay alimony continues after remarriage of the party receiving alimony unless the parties expressly provide otherwise in their agreement. I would hold, rather, that agreements for alimony must be interpreted consistently with the terms of 23 Pa.C.S. § 3701(e) unless the parties specifically provide that alimony payments shall continue even after the party receiving alimony payments has remarried. The burden of proving an intent contrary to the policy pronounced by the legislature should be on the party so asserting.

I would also hold, pursuant to the terms of the parties' agreement, that husband's duty to provide wife with medical coverage and a leased vehicle came to an end when wife remarried. These obligations were to continue for as long as husband was required "to pay support." The reference to husband's duty to pay support, in my judgment, was intended to refer to husband's obligation to pay spousal support or alimony. When the duty to pay alimony came to an end because of wife's remarriage, husband's obligation to provide wife with medical coverage and a leased vehicle also came to an end. Any other result appears to be so unreasonable and so punitive as to exceed any intent that I have been able to discern from the parties' agreement.

Therefore, I dissent. I would reverse and vacate the order requiring appellant to pay continuing alimony.

DEL SOLE, J., joins.