J-S39032-16

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P 65.37**

| | | |
|---|---|---|
| JEWEL L. WOODS, | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| JAMES A. WOODS, | : | |
| | : | |
| Appellant | : | No. 2098 MDA 2015 |

Appeal from the Order Entered November 5, 2015
in the Court of Common Pleas of York County
Civil Division at No(s): 2011-FC-640-15

BEFORE:    STABILE, PLATT,* and STRASSBURGER,* JJ.

MEMORANDUM BY STRASSBURGER, J.:                    **FILED JULY 26, 2016**

James A. Woods (Husband) appeals from the order entered November 5, 2015 denying his petition for enforcement of the parties' marital settlement agreement.  Specifically, Husband seeks enforcement of a provision regarding the marital residence.  We vacate the trial court's order and remand for proceedings consistent with this memorandum.

Husband and Appellee Jewel Woods (Wife) were married on January 16, 1993, and separated in October 2010.  On April 13, 2011, Wife filed a complaint for divorce and a petition for special relief, requesting that Husband transfer all of his interest in the marital residence to Wife.  Soon thereafter, the parties entered into a partial marital settlement agreement (partial settlement agreement) which provided, in relevant part, the following:

*Retired Senior Judge assigned to the Superior Court.

The parties acknowledge that at the time of separation they were the owners of real property located at 1265 Cranberry Lane West, York, Windsor Township, York County, Pennsylvania which served as the marital residence. The parties further acknowledge that Wife has been residing in the marital residence since separation.

The parties hereby agree that the marital residence is subject to a first mortgage with Chase Home Mortgage, having an approximate balance of $304,000.00 and a second mortgage with Chase Home Mortgage having an approximate balance of $75,000.00. The parties agree that the fair market value of the property is less than the amount owed to Chase Home Mortgage on the first and second mortgages and that there is no equity for distribution between them. The parties further acknowledge that Husband was primarily responsible for making the mortgage payments while the parties were together and that both mortgages were delinquent at the time of separation with the last payment having been made on March 10, 2010.

The parties acknowledge that Wife would like to retain the marital residence and is seeking a mortgage modification through Chase Home Mortgage.

Husband hereby agrees to transfer to Wife all of his right, title and interest in and to the marital residence. In furtherance of this covenant, Husband shall, contemporaneously with the execution of this agreement, duly execute and acknowledge a Deed transferring all his right, title and interest in and to the said property to Wife, with the understanding that the Deed shall be held in escrow by Wife's attorney until Wife's mortgage modification has been approved. Wife shall assume full responsibility for the costs associated with the preparation and recording of the Deed for the transfer of the marital residence by Husband to Wife.

The parties acknowledge that Wife shall assume sole responsibility for payment of the first and second mortgages, real estate taxes, premiums for liability and fire insurance coverage, sewer, water, utilities, refuse collection, maintenance, repairs and assessments at the residence.

Wife agrees to indemnify and hold Husband harmless of and from any such liabilities, obligations, claims or demands as a result thereof since the date of execution of this Agreement. Wife agrees that she will attempt to either refinance the existing mortgages with Chase Home Mortgage so as to remove Husband's name from liability and/or gain approval for a mortgage modification on said property within ninety (90) days of the execution of this Agreement.

In the event that Wife is unable to refinance and/or assume the first and second mortgages to remove Husband's name from the same within ninety (90) days, then in such event, the parties agree, that at Husband's request, the property shall be placed for sale with a responsible Real Estate Agent, chosen by the parties. The parties will cooperate with the Real Estate Agent's suggestions with regard to the listing price, reduction of price and acceptance of offers, as well as the appearance of the home. Further, both parties will cooperate with the Short Sale[1] process and will provide any and all documentation requested by the first and second mortgage companies so that the property may be approved as a Short Sale.

Partial Settlement Agreement, 4/25/2011, at 3-4.

At the November 4, 2015 special relief hearing which preceded this appeal, Wife testified that following the parties' 2011 partial settlement agreement she sought, but was unable to secure refinancing from the bank. Wife contends the bank was unwilling to refinance the mortgage because Husband failed to pay the mortgage for ten months, which she claims she was unaware of when she entered into the partial settlement agreement.

---

[1] A short sale is "the sale of a real property for less than the mortgage loan balance." Ronald D. Jung, Short Sale Assistance in Colorado and Under Mars, Colo. Law., January 2012, at 69.

- 3 -

N.T., 11/4/2015, at 5. She was, however, approved for a loan modification lowering her monthly obligation, and she began paying the mortgage. *Id.* at 15.

Husband testified at the hearing that in April 2013 he sent Wife a letter, through counsel, electing to enforce the provision within the partial settlement agreement which allowed him to request the property be sold. *Id.* at 34-35. The issue was eventually referred to a Divorce Master and the parties reached an agreement on May 21, 2015 (second settlement agreement). The second settlement agreement, as detailed by their respective attorneys on the record specified, in part, the following:

> [Husband's Attorney]: At this point the agreement -- we are going to dictate an agreement on the record. It will be incorporated, but not merged into the decree. Both parties -- the standard provisions with regard to both parties have the right to live separate and apart would be contained in the agreement and the actual property [*sic*]. The parties together own a home located at 1265 Cranberry Lane West, York, in York County, Pennsylvania 17402. There is currently a mortgage on the property with a principle [*sic*] balance of approximately $375,000.00 through Chase Bank. There is a possibility that Chase Bank may have acted inappropriately in regard to the first and second mortgages. In that the second mortgage should ha[ve] been forgiven rather than added to the first loan. This would reduce the total loan amount. Nonetheless, neither party would make [any more] payments toward this debt from this day forward. There is an interim property settlement agreement in which wife indicated she would hold husband harmless with regard to the payments on this property. That agreement would remain in effect. If [W]ife chooses to bring any action against Chase Bank, she would be entitled to any proceeds from that action.

> [Wife's Attorney]: And [H]usband waives any claim to those proceeds.
>
> [Husband's Attorney]: Husband would waive any claim. However, such an action would not slow down the short sale or other provisions related to getting rid of this property. Specifically, the parties will use Wade Elfner to start the process for a short sale of the properties. Wade indicates that he uses a professional company in Harrisburg that specializes in short sales. Both parties will cooperate in providing any documents requested by the short sale company or the real estate agent within ten days of such a request. If at any point Mr. Elfner does not want to proceed or feels it is not going to be fruitful to proceed with the short sale, then the parties will attempt a deed in lieu of foreclosure. If the bank does not want to cooperate with regard to a deed in lieu of foreclosure, then the parties will proceed to a foreclosure. Wife may remain in the property during the time that the property is listed for short sale and/or any foreclosure proceedings are occurring.

N.T., 5/21/2015, at 3-5.

Wife initially complied with the second settlement agreement, foregoing payment of the mortgage for one month. However, she testified that after her credit score "plummeted seventy points in one month" she began making payments again, contrary to the terms of the second settlement agreement. N.T., 11/4/2015, at 9-10. Wife cites her mistaken belief that a short sale would not hurt her credit "because the judge told [her] to do it." *Id.* at 16-17. Wife contends that she would not have been able to find a place to rent or get another loan if she continued to miss mortgage payments. *Id.* at 9-10.

Husband filed a petition for enforcement of both settlement agreements on August 20, 2015. Specifically, Husband sought to enforce

J-S39032-16

the provision within the second settlement agreement that Wife cease paying the mortgage on the marital property.[2] Following the conclusion of testimony at the special relief hearing, the trial court denied Husband's petition on the record. This timely filed appeal followed.[3]

Husband sets forth a number of issues on appeal. However, as an initial matter we consider his contention that the trial court erred by not enforcing the marital settlement agreement. *See* Appellant's Brief at 4.[4]

In considering this issue, we bear in mind that marital settlement agreements are governed by the law of contracts. *Stamerro v. Stamerro*, 889 A.2d 1251, 1258 (Pa. Super. 2005).

> Because contract interpretation is a question of law, this Court is not bound by the trial court's interpretation. Our standard of review over

---

[2] At the April 2015 special relief hearing, Wade Elfner, a real estate broker, explained why Wife must cease paying the mortgage in order to attempt to enter into a short sale. *See* N.T., 11/4/2015, at 27 ("[T]he mortgage company will give no credence if a loan is current. They're not [going to] voluntarily forgive money to a seller just because they don't want to pay anymore. … If they're [going to] take a short sale on price, they want the homeowner to have consequences and that would be credit [consequences].")

[3] On July 23, 2015 the trial court entered a divorce decree.

[4] Husband complied with the trial court's directive to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925. The trial judge, however, did not file an opinion and instead submitted a notice to this Court stating that due to his "pending retirement and attendant time constraints as well as a lack of transcript presently, a formal 1925 opinion will not be filed in this appeal." *See* Notice to the Superior Court Re: 1925 Opinion, 12/30/2015. The transcript in this case was filed on December 16, 2015.

> questions of law is *de novo* and to the extent necessary, the scope of our review is plenary as the appellate court may review the entire record in making its decision. However, we are bound by the trial court's credibility determinations.

***Kraisinger v. Kraisinger***, 928 A.2d 333, 339 (Pa. Super. 2007) (quoting ***Stamerro,*** 889 A.2d at 1257-58).

The standard of enforceability of a marital settlement agreement is well settled: "[a]bsent fraud, misrepresentation, or duress, spouses should be bound by the terms of their agreements." ***Crispo v. Crispo***, 909 A.2d 308, 313 (Pa. Super. 2006) (quoting ***McMahon v. McMahon***, 612 A.2d 1360, 1363 (Pa. Super. 1992)) (citations omitted). "We are not permitted to review the reasonableness of a marital settlement agreement to determine its validity." ***Paroly v. Paroly***, 876 A.2d 1061, 1065 (Pa. Super. 2005) (citing ***Simeone v. Simeone***, 581 A.2d 162 (Pa. 1990)). A trial court has "neither the power nor the authority to modify or vary the decree unless there is conclusive proof of fraud or mistake." ***Bianchi v. Bianchi***, 859 A.2d 511, 515 (Pa. Super. 2004).

Following testimony by the parties and real estate broker, Wade Elfner, the trial court denied Husband's request to enforce the settlement agreement. In doing so the trial court stated:

> So, here's my dilemma. [Husband's] premise is faulty on saving [his] credit, but nevertheless the agreement itself provides for certain things. [W]ife now argues, as we hear from

- 7 -

[Wife's Attorney], it's impossible[5] to do what the agreement says. Well, not really. [Wife] can stop making the payments, wait the default period, attempt to do a short sale, which is what the import of the agreement is, and then whatever happens happens.

Well, here's my take on that. That's a circumstance that I view as an unnecessary problem for both parties because now you end up with a foreclosure on your credit as well as the default in payments. Is this the case where I am called upon to save both parties from themselves? I get it. You want something done. You want action. Wife wants an opportunity to straighten this out.

What is the import of enforcing the agreement? My conclusion is there's no benefit to [H]usband[6], so why would I do that simply to penalize [W]ife, who has been making payments? And there also is the troubling issue of [Husband] waiting for two years to come forward.

---

[5] At the special relief hearing, Wife testified that she did not adhere to the settlement agreement, in particular, the part in which she agreed not to make any future payments on the mortgage because her credit score plummeted, which she was unaware would occur if she stopped paying the mortgage. Wife stated she feared having bad credit because she was caring for children and testified that when she went to look for other financing or a place to rent "people laughed at [her]." N.T., 11/4/2015, at 10-11. Wife's attorney summarized Wife's position by stating: "your honor, this isn't a case where my client doesn't want to not [*sic*] be agreeable or not comply. It's a case where she's not able to comply. She lives in a house with a number of children that she's obligated for. She does not want herself and the children to be homeless. She's not able to obtain another place for her to live." *Id.* at 51. In her brief to this Court, Wife argues that her mistaken understanding as to the effect not paying her mortgage would have on her credit was material, and enough to warrant the trial court not to enforce the contract. Wife's Brief at 7-8.

[6] Husband disagrees with the trial court's finding that the agreement would not benefit him. To the contrary, Husband contends that "he cannot buy a house and has trouble even buying a car because he is still listed as the primary borrower on the mortgages for the marital residence. [Husband] testified that, aside from bad credit, the amount of debt is creating a debt-to-income ratio that requires him to pay a higher interest rate." Husband's Brief at 11 (citations to the record removed).

N.T., 11/4/2015, at 51-56.

Based on the foregoing, it is evident the trial court did not apply the applicable standard a court must use when deciding whether a contract is enforceable. The trial court's reasoning was based neither on a finding of ambiguity within the agreement nor on any purported fraud, misrepresentation or duress. In deciding not to enforce the agreement, the trial court essentially substituted its personal opinion that the agreement did not benefit the parties, in lieu of determining whether the agreement was valid under the law, and therefore the provision mandating Wife to cease payment of the mortgage was enforceable.

Because we find the trial court abused its discretion, we vacate the court's order and remand for a new hearing to determine whether the parties' May 21, 2015 settlement agreement, which incorporated the partial settlement agreement,[7] should be enforced in accordance with the above-stated case law. At that time, the trial court is also directed to address Husband's request for relief and issues regarding attorney's fees and Wife's contempt.

Order vacated. Case remanded for proceedings consistent with this memorandum. Jurisdiction relinquished.

_____

[7] The second settlement agreement stated that the partial settlement agreement "should remain in full force and effect and be incorporated into this agreement to the extent it is not inconsistent with it." N.T., 5/21/2015, at 11.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 7/26/2016