**Dechant v. Dechant**

*Scott A. Petri,* for plaintiffs.
*Richard I. Moore,* for defendants.

GILMAN, *J.,* April 14, 2011—This case involves a disputed transfer of real property upon death. Plaintiffs, James D. Dechant, and Lori D. Tyler (hereinafter referred to collectively as "plaintiffs")[1], have appealed from this

1. James Dechant is the executor of his father's last will and

court's order of December 1, 2010. Our order denied plaintiffs' petitions for partition and for enforcement of a property settlement agreement (hereinafter referred to as the "PSA") between their father, the decedent, Robert G. Dechant, and his widow, Lenora Dechant (hereinafter referred to as "defendant" or "Ms. Dechant"). We offer this opinion in support of our order and decision.

## BACKGROUND

This matter was tried before this court, sitting without a jury, on August 30, 2010. Plaintiffs asserted that the PSA executed on September 21, 2006 by their father and his second wife, Ms. Dechant, is enforceable, and that accordingly, Ms. Dechant must either purchase the decedent's fifty percent (50%) interest in the real property located at 6335 Fernwood Avenue in Bensalem, Bucks County (hereinafter referred to as the "property"), which plaintiffs assert has passed to them as heirs, or list the property for sale and remove herself from the property. Defendant Ms. Dechant, married to decedent for more than twenty (20) years, asserted that as of the time of her husband's death on May 16, 2009, the property was owned by her as a tenant by the entirety, and therefore, by operation of law, passed to her fully and completely upon her husband's death. We agree with defendant's position.

Based upon the facts and law, as discussed below, we entered our opinion and verdict on December 1, 2010, including extensive findings of facts and conclusions of

---

testament, and brought this action individually, along with his sister Lori Tyler, as well as in his capacity as executor. Ms. Tyler was not present at the trial.

law, wherein we found in favor of defendant and against plaintiffs. We also denied and dismissed plaintiffs' request for legal fees and costs. Plaintiffs filed a motion for post-trial relief on December 10, 2010, which we denied by order dated January 19, 2011.

Plaintiffs then filed the instant appeal to the Superior Court.

## STATEMENT OF MATTERS COMPLAINED OF ON APPEAL

We recite plaintiffs' 1925(b) statement of matters complained of on appeal verbatim, as follows[2]:

1. Whether the learned trial judge failed to find that at the time of decedent's passing decedent owned the subject real estate with his wife as tenants in common, the parties having executed a property settlement agreement which severed the entireties.

2. Whether the learned trial judge failed to recognize that as a matter of law that the execution of the property settlement agreement by the parties severed the tenancy by the entireties and contains an integration clause which does not allow consideration of other matters except to resolve an ambiguity.

3. Whether the Learned Trial Judge erred in finding that the parties modified and/or rescinded the terms of the property settlement agreement as the property settlement agreement states that any amendments or

---

2. Plaintiffs' matters complained of on appeal are mis-numbered; plaintiffs' number 10 should have been number 9.

modifications are invalid unless set forth in writing and no such oral modifications of property settlement agreement can be recognized unless in writing.

4. Whether the learned trial judge failed to find that the property settlement agreement, which is not predicated by divorce and where the parties released testamentary claims against each other and provided that the parties shall continue to own subject property jointly and intended to list the residence within five (5) years of the date and divided the net proceeds 50-50, was intended to and did create a tenancy in common.

5. Whether the learned trial judge erred in failing to enter an order enforcing the terms of the property settlement agreement by requiring the defendant to sell the subject property within five (5) years of the decedent's death.

6. Whether the learned trial judge erred in failing to find that the plaintiffs are third party beneficiaries of the property settlement agreement as it contains a provision making its terms enforceable by the heirs of the parties to the property settlement agreement.

7. Whether the learned trial judge erred in finding [sic] to grant plaintiffs' request for partition of the subject property.

8. Whether the learned trial judge erred in failing to find that no divorce proceedings were necessary for enforcement of the terms of the property settlement agreement.

9. Whether the learned trial judge's decision is contrary to the terms of the property settlement agreement and is in error since the order amends, without authority, those terms.

## STANDARD OF REVIEW

When an appellate court reviews a non-jury case such as this, its review is

limited to a determination of whether the findings of the trial court are supported by competent evidence and whether the trial court committed error in the application of law. Findings of the trial judge in a non-jury case must be given the same weight and effect on appeal as a verdict of a jury and will not be disturbed on appeal absent error of law or abuse of discretion. When this [Superior] Court reviews the findings of the trial judge, the evidence is viewed in the light most favorable to the victorious party below and all evidence and proper inferences favorable to that party must be taken as true and all unfavorable inferences rejected... The [trial] court's findings are especially binding on appeal, where they are based upon the credibility of the witnesses, unless it appears that the court abused its discretion or that the court's findings lack evidentiary support or that the court capriciously disbelieved the evidence. *Shaffer v. O'Toole* 964 A.2d 420, 422-423 (Pa. Super. 2009) (internal citations omitted).

It is well-established that the paramount goal of contract interpretation, including property settlement agreements, is to ascertain and give effect to the

parties' intent. When a trier of fact has determined the intent of the parties to a contract, an appellate court will defer to that determination if it is supported by the evidence. *Cioffi v. Cioffi,* 885 A.2d 45 (Pa. Super. 2005).

## DISCUSSION

Plaintiffs' took the position at trial, and now on appeal, that the decedent and Ms. Dechant held the property as tenants in common because the PSA severed the tenancy by entireties. If that were true, decedent could legally have conveyed or devised his undivided one-half interest in the property to his children. Given the evidence presented at trial, we determined that as of the time of decedent's death, the property was held as tenants by the entireties by decedent and Ms. Dechant, and that the PSA was neither valid nor enforceable due to the actions of decedent and Ms. Dechant subsequent to the drafting of the PSA.

The following factual and legal analysis of the status of the property upon Robert Dechant's death in May, 2009, along with analysis of the validity and enforceability of the PSA drafted approximately three (3) years prior to his death, will serve to more than adequately address all of the issues delineated (sometimes repetitively) in plaintiffs' statement of matters complained of on appeal.

*Decedent and defendant held the subject property as tenants by the entireties as of husband's death.*

Decedent and Ms. Dechant were married in September, 1988 (N.T. 8/30/10, p.59), and they had been married for nearly twenty-one (21) years at the time of decedent's death on May 16, 2009. While Robert Dechant had

initially acquired the property on May 4, 1984, prior to the marriage, it became the marital residence of decedent and Ms. Dechant.

On November 16, 2001, decedent executed a deed conveying the property from himself, solely, to himself and Ms. Dechant, for one dollar ($1.00) consideration. (N.T. 8/30/2010, p.14) The 2001 deed does not specify whether the property was to be held as tenants in common, as joint tenants with right of survivorship, or as tenants by the entireties, and does not reference Ms. Dechant as decedent's wife in the guarantee section. However, it is noted on the deed that the transaction is a transfer from husband to husband and wife, and is therefore transfer tax exempt. (N.T. 8/30/10, p.15)

Longstanding decisional law of this Commonwealth persuades us that Mr. and Ms. Decant held the property as tenants by the entireties. "It is a cardinal rule in the interpretation of conveyances that every deed should be so construed as to give effect to the intent of the parties. [W]here the deed to a husband and wife [from the spouse] discloses no intention to create any estate but one by the entireties, such as estate is created in the grantees." *In re Vandergrifts Estate,* 161 A. 898 (Pa. Super. 1932). "In order to overcome the presumption that an estate by the entireties exists...there must be clear and convincing evidence to the contrary." *In re Holmes' Estate* 414 Pa. 403, 406, 200 A.2d 745, 747 (1964). "Where property is placed in the names of both the husband and wife, the creation of a tenancy by the entireties is presumed." *Gilliland v. Gilliland,* 751 A.2d 1169, 1172 (Pa. Super.

2000) citing *Raiken v. Mellon,* 582 A.2d 11, 14 (Pa. Super. 1990). Given these legal principles, and applying them to the credible testimony at trial, it is clear that plaintiffs have failed to present clear and convincing evidence to rebut the legal presumption that the marital property was held by decedent and Ms. Dechant as tenants by the entireties.

Since decedent and Ms. Dechant were married as of the time of decedent's death, and because the type of ownership of the real property had not been changed by deed during the course of the marriage, it follows that Ms. Dechant, as a matter of law, holds the right of survivorship. A defining characteristic of tenancy by the entireties, which is grounded in the unity of the marital relationship, is the right of survivorship. Upon the death of one spouse, the survivor becomes the sole owner of the entireties property. *Clingerman v. Sadowski,* 513 Pa. 179, 182, 519 A.2d 378, 380 (Pa.1986). It is abundantly clear, then, that Ms. Dechant now holds the entire fee interest in the property. Plaintiffs have not met their burden of establishing by clear and convincing evidence that Mr. and Ms. Dechant held the property as tenants in common as opposed to by the entireties.

*The property settlement agreement of September 21, 2006.*

The key question we had to determine as to the PSA was whether or not, as plaintiffs asserted, it severed the tenancy by entireties. The determination of marital property rights through settlement agreements has long been permitted, and even encouraged. In Pennsylvania,

property settlement agreements between husband and wife are subject to the same rules as those applying to contract interpretation. *Cioffi*, supra at 48. In reviewing a court's order to uphold a marital property settlement agreement, the appellate courts are limited to determining whether the trial court clearly abused its discretion or committed an error of law. If the trial court's determination is supported by the record, the appellate courts may not substitute their own judgment for that of the trial court, nor may they "usurp the trial court's factfinding function." *Id.* at 48.

The Pennsylvania Supreme Court has held that "it is always competent for the parties to a written contract to show that it was subsequently abandoned in whole or in part, modified, changed, or a new one substituted. This may be shown by parol evidence, by showing either an express agreement or actions necessarily involving the alterations." *Wagner v. Graziano Const. Co.,* 390 Pa. 445, 448, 136 A.2d 82, 84 (Pa. 1957).

We found that pertinent provisions of the PSA are unenforceable in this case because the parties subsequently modified and/or rescinded the PSA by their actions. For example, although paragraph NINTH of the PSA provided that husband "shall have sole and exclusive possession from and after August 20, 2006",[3] that provision never

--------

3. Paragraph nine of the PSA reads in full as follows: "A. real estate -- The marital residence located at 6335 Fernwood Avenue, Bensalem, PA 19020 shall [sic]continue to be owned jointly by the parties, except that husband shall have sole and exclusive possession from and after August 20, 2006. Further, husband shall pay the mortgage and taxes and maintain the general condition of the [sic] without incurring any major expenses. The parties intend to list the residence for sale within five (5) years from the date of the divorce and divide the net proceeds of the sale,

came to fruition, as decedent and Ms. Dechant initially continued to reside together for more than one (1) year beyond that date. Later, although decedent (husband) moved out of the marital residence from approximately October of 2007 until April of 2008, he returned to the residence in April 2008 and continued to reside there with Ms. Dechant until his death in May 2009. (N.T. 8/30/2010, p. 52, 59-60) Contrary to paragraph nine of the PSA, then, decedent (husband) never assumed exclusive possession of the marital home.

Decedent lived with a friend from October 2007 until just after his initial cancer diagnosis "approximately in April... April of "08." (N.T. 8/30/2010, p.52) Ms. Dechant testified that when decedent moved out of the marital residence, the intention was for the parties to separate; "he [decedent] did not mention divorce...that we would just be living apart." (N.T. 8/30/2010, p.59) Ms. Dechant stated that decedent moved back into the marital home in the spring of 2008 because "he wanted to be with me and in his own home." (N.T. 8/30/2010, pp.37-38, 60) She helped care for decedent medically from the time he moved back to the property until the time of his death thirteen (13) months later. (N.T. 8/30/2010, p. 60) Between April 2008 and May 2009, decedent and Ms. Dechant never discussed getting a divorce. (N.T. 8/30/2010, p.60)

On rebuttal, James Dechant testified at trial, over a continuing objection by defendant, that shortly before his father died, his father told him that when he recovered, he

after all fix-up and selling costs equally; i.e. (50%) fifty percent to each party."

was planning to go ahead with a divorce. (N.T. 8/30/2010, pp. 62-63) Such discussion allegedly occurred on "the Wednesday before he [decedent] went on the ventilator." (N.T. 8/30/2010, pp. 62-63) (within two (2) weeks of his father's death) James Dechant also testified that in early- to mid-2006, he had discussions with his father about his father's marital circumstances, "the [problems that they had had and the direction that they might go." (N.T. 8/30/2010, p.64) James Dechant testified that at some point, his father told him that "they weren't filing for divorce yet but they had an agreement in place." (N.T. 8/30/2010, p.65) According to James Dechant, his father "never expressed an intention to reconciliation." (N.T. 8/30/2010, p. 67)

Mr. Dechant never had exclusive possession of the property subsequent to marrying defendant, and prior to his death. (N.T. 8/30/2010, p.52) Additionally, although paragraph nine required that "Husband shall pay the mortgage and taxes and maintain the general condition of the (premises) without incurring any major expenses," the testimony established that while decedent paid the mortgage and taxes, Ms. Dechant paid for its upkeep. The fact that husband-decedent complied with one provision, paragraph 15 B, the liquidation and distribution of an IRA held by him, does not negate the substantial effect of husband and wife's non-compliance with other material provisions of the PSA.

We found Ms. Dechant's testimony as to the nature of her marital relationship with Mr. Dechant to be credible. While decedent and Ms. Dechant originally included

language in paragraph nine of the PSA regarding selling the marital home within five (5) years of divorce, their continued conduct thereafter served to negate the triggering pre-condition. Furthermore, the testimony presented convincingly established that the continuing cohabitation relationship and devoted marital conduct of decedent and Ms. Dechant subsequent to having drafted the PSA in 2006 reflected their true intent. We could not reasonably conclude that the language of the PSA regarding divorce, in contrast to the actual conduct of the parties thereafter, was a true reflection of the parties' intentions.[4]

The law is clear that even where the written contract prohibits a non-written modification, it may be modified by subsequent oral agreement. The Supreme Court in *Wagner*, supra, held that proof of oral modification of a written contract does not have to be expressed in words. It may be inferred from the acts and declarations of the parties. Such is the case here, with regard to decedent's and Ms. Dechant's conduct. Clear and convincing evidence as to the PSA's lack of enforceability is deduced from Mr. and Ms. Dechant continuing to live together for the majority of time after the PSA was executed, from decedent never assuming exclusive possession of the home, and from neither spouse ever initiating divorce proceedings.

Moreover, the PSA is unenforceable here because the triggering event for sale of the marital residence was,

---

4. We did not discount James Dechant's testimony that he had conversations with his father over the years about the relationship between decedent and Ms. Dechant. However, the occurrence of such discussions, in light of the testimony as to actual conduct, did not validate the PSA or require its enforcement.

according to the terms of the PSA contract, a divorce. However, no divorce ever occurred, and no divorce proceedings were even initiated. The relevant language of paragraph nine states: "The parties intend to list the residence for sale within five (5) years from the date of the divorce..." No alternative was provided to implement the PSA should a divorce not occur. If decedent and Ms. Dechant had truly desired to resolve all property issues by way of the PSA, whether they divorced or remained married, then they would have and/or should have chosen another triggering event, such as five (5) years from the date of the execution of the PSA, as an alternative for listing the marital residence for sale.[5]

## CONCLUSION

For all of the reasons discussed above, our factual and legal analysis yielded the inescapable conclusion that the property was held by decedent and Ms. Dechant as tenants by the entireties as of Mr. Dechant's death in May, 2009. Moreover, it is clear that the entireties status was not legally extinguished by any enforceable provisions of the 2006 PSA that the spouses executed.

Accordingly, we respectfully submit that our order of December 1, 2010, denying and dismissing plaintiffs' petition for partition and for enforcement of the PSA, should be affirmed.

---

5. Even assuming arguendo that plaintiffs are third party beneficiaries of the PSA, as they assert, our finding that the PSA is unenforceable as to the sale of the marital home renders this assertion irrelevant. Additionally, contrary to the assertion of plaintiffs, the integration clause containedd within the PSA does not, nor should it, in any way impact our analysis of the enforceability of any provisions of the PSA.