J-S42043-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| MATTHEW G. MORRISON | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| HOLLY S. MORRISON | : | No. 806 WDA 2022 |

Appeal from the Order Entered June 28, 2022
In the Court of Common Pleas of Westmoreland County Civil Division at
No(s):  1388 of 2012-D

BEFORE:   BOWES, J., OLSON, J., and COLINS, J.[*]

MEMORANDUM BY COLINS, J.:                       **FILED: MARCH 30, 2023**

Appellant Matthew G. Morrison (Husband) appeals from the June 28, 2022 order of the Court of Common Pleas of Westmoreland County (trial court) granting the motion of Holly S. Morrison (Wife) to enforce a marital settlement agreement.  For the reasons set forth below, we vacate the trial court's order in part and remand for further proceedings.

Husband and Wife were married on May 20, 1995 and separated on February 4, 2012.  Throughout the marriage, Husband was employed by Wilkinsburg Police Department.  On September 11, 2014, Husband and Wife entered into a marital settlement agreement (the Marital Settlement Agreement) and a divorce decree was issued on November 7, 2014.  The

---

[*] Retired Senior Judge assigned to the Superior Court.

Marital Settlement Agreement provided the following with respect to pension and retirement benefits:

> **Wife shall receive 40% of the marital portion of Husband's Municipal Police Pension fund valued at the date of separation.** It is acknowledged that Husband began his employment with the Wilkinsburg Police Department on April 12, 1994, the parties married on May 20, 1995 and separated on February 4, 2012. It is also acknowledged that **the parties shall utilize the January 1, 2012 statement from the Borough of Wilkinsburg which sets forth the estimated normal retirement benefit of $3,450.02 per month as the value of the pension plan for valuation purposes.** A Qualified Domestic Relations Order shall be prepared to effectuate the transfer to Wife. **Other than this transfer, each party shall retain any and all right, title and interest in his/her own employee benefit retirement plans, pensions, individual retirement accounts, profit sharing plans, or employee stock option plans free from any claim of the other party.** Wife's counsel shall be responsible for preparation of said Qualified Domestic Relations Order. It is acknowledged, however, that the Municipal Police Pension Fund could become bankrupt and no funds would be available. If so, neither Husband nor Wife shall receive any benefits. If said Fund is reduced by a %, Husband's and Wife's share shall be reduced by the same percentage.

Marital Settlement Agreement ¶6 (emphasis added).

On November 20, 2019, Husband filed an application for retirement benefits with the Borough of Wilkinsburg Police Pension Plan (the Plan) seeking disability retirement benefits of $3,249.81 per month as of December 1, 2019. N.T. at 15-16; Application for Retirement Benefits. On December 4, 2019, the Plan authorized payment of pension benefits of $3,249.81 per month to Husband, beginning January 1, 2020 and retroactive to December 1, 2019, describing the type of retirement benefit being paid as "Disabled." N.T. at 14-15; 12/4/19 Pension Plan Authorization. Husband was 52 years old at the

time that he applied for and was found qualified for these benefits. 12/4/19 Pension Plan Authorization. No Qualified Domestic Relations Order (QDRO) had been prepared and Husband did not provide the Marital Settlement Agreement to his employer or to the Plan. N.T. at 6, 19-20. The Plan paid the full monthly $3,249.81 benefits to Husband. *Id.* at 18-19; Pension Plan Payment Deposit Confirmations.

On March 28, 2022, Wife filed a motion to enforce the Marital Settlement Agreement alleging that she had recently learned that Husband was retired and receiving pension benefits and seeking her 40% of the marital portion of the benefits that Husband was receiving. The trial court held an evidentiary hearing on June 21, 2022, at which Wife appeared, represented by counsel and Husband appeared *pro se*. At this hearing, both Wife and Husband testified and Wife introduced documents concerning the benefits that Husband was receiving from the Plan, including his application for benefits, the Plan's December 4, 2019 authorization of his benefits, and deposit confirmations showing the benefit payments.

At this hearing, Husband admitted that he filed an application for retirement benefits seeking disability retirement benefits of $3,249.81 per month as of December 1, 2019, that the Plan authorized payment of those benefits, and that he had received and was continuing to receive those $3,249.81 monthly in disability retirement benefits. N.T. at 11-12, 14-16, 18-19. Husband testified that he believed that the pension payments that he was

receiving were disability compensation, not retirement benefits, because he was receiving them due to his inability to work, but admitted that he did not dispute that Wife was entitled to the share of those payments provided by the Marital Settlement Agreement from September 2022 on after he had reached normal retirement age. *Id.* at 21-22, 27-28.

The Plan's December 4, 2019 authorization of benefits states that December 1, 2019 is Husband's "Retirement Date." 12/4/19 Pension Plan Authorization. The deposit confirmations that were introduced in evidence state that the payments are from the Wilkinsburg Police Pension Plan and list "disability" as the description of the payments. Pension Plan Payment Deposit Confirmations. Neither Husband nor Wife introduced the pension plan document or called any witness from the Plan to explain the nature of the benefits that Husband was receiving or the effect of the disability retirement on other retirement benefits under the Plan. A letter from a Plan consultant, introduced in evidence by Wife, stated that

> the plan provides that disability benefits are payable until the earliest of the death of the participant or attainment of normal retirement age. Thereafter the participant shall receive a Normal Retirement Benefit under the terms of the plan.

Feaster Pension Consulting, Inc. 11/22/19 Letter. No evidence was introduced that showed what the amount of Husband's "Normal Retirement Benefit" would be after he had received disability pension benefits or that it would be unaffected by the fact that he retired early under disability retirement.

On June 28, 2022, the trial court entered an order directing 1) that a QDRO be prepared providing that Wife is to receive 40% of the marital portion of the payments that Husband receives from the Plan; 2) that Husband pay Wife $26,252.54, representing 40% of the marital portion of the $3,249.81 monthly payments that Husband received through the end of June 2022; and 3) that Wife receive $864.84 per month, representing 40% of the marital portion of Husband's $3,249.81 monthly payments from July 2022 until the QDRO is in force. Trial Court Order, 6/28/22; Trial Court Opinion at 3-4. Husband retained counsel and timely appealed.

We may reverse an order enforcing a marital settlement agreement only where the court has committed an abuse of discretion or an error of law. *Rosiecki v. Rosiecki*, 231 A.3d 928, 933 (Pa. Super. 2020); *Cioffi v. Cioffi*, 885 A.2d 45, 48 (Pa. Super. 2005). Husband argues that the trial court erred in holding that Wife is entitled to a percentage of the payments that he received from the Plan prior to September 2022 because the payments prior to that date are disability payments to which Wife has no rights under the Marital Settlement Agreement.[1]

---

[1] Husband sets forth this single question as nine separate issues in his statement of questions, but treats it as one issue in the argument section of his brief. Because Husband's purported separate issues are all portions of or restatements of the above-described single issue, we treat them as one issue, as Husband does in his argument.

A pure disability benefit that is completely separate from a spouse's retirement pension rights is not a marital asset subject to equitable distribution in a divorce. *Cioffi*, 885 A.2d at 49; *Ciliberti v. Ciliberti*, 542 A.2d 580, 582 (Pa. Super. 1988). A marital settlement agreement that gives a spouse a right to a share of the other spouse's pension interest therefore does not apply to disability pension payments paid as result of a subsequent disability if it is shown that the disability payments do not eliminate or reduce the retirement benefits that are subject to the marital settlement agreement. *Cioffi*, 885 A.2d at 49-50.

In contrast, a disability pension that is paid in lieu of a retirement pension to which the recipient would otherwise be entitled or reduces the amount that will be paid at retirement age constitutes a retirement pension that is subject to equitable distribution. *Hayward v. Hayward*, 630 A.2d 1275, 1276-77 (Pa. Super. 1993). Accordingly, a marital settlement agreement that gives a spouse a right to a share of the other spouse's pension applies to a disability pension that substitutes for or reduces the retirement benefits that would otherwise be paid and gives the spouse that share of the disability pension payments.

Here, the Marital Settlement Agreement gave Wife the right to receive 40% of the marital portion of Husband's pension under the Plan. Marital Settlement Agreement ¶6. Wife showed that Husband was receiving pension benefits from the Plan. Unless the pension payments were purely disability

payments that did not adversely affect Husband's retirement pension, Wife is therefore entitled to 40% of the marital portion of those pension payments.

The record, however, is inadequate to determine the critical fact of whether the disability pension reduced Husband's retirement pension. Contrary to Husband's assertions, the record does not show that his retirement pension benefits are unaffected by his disability pension. Documents introduced at the hearing did reference a disability retirement benefit or disability pension benefit separate from the "Normal Retirement Benefit" and stated that Husband's "Normal Retirement Date" was September 1, 2022. 1/1/12 Plan Pension Benefit Statement; 12/4/19 Pension Plan Authorization; Feaster Pension Consulting, Inc. 11/22/19 Letter. One of these documents further states that the disability pension benefits terminate when the recipient reaches normal retirement age and from that date on he receives a Normal Retirement Benefit. Feaster Pension Consulting, Inc. 11/22/19 Letter at 2.

But none of these documents sets forth what the Normal Retirement Benefit is when early pension payments have been taken under disability retirement and there was some evidence those disability pension payments reduced the retirement benefit. Husband testified that the $3,450.02 per month, the amount of Husband's pension that was subject to the Marital Settlement Agreement, was "the amount that would have been received" if he "were to have gone or retired at that date and time" when he reached

retirement age. N.T. at 13-14. Moreover, when Wife argued at the hearing that the disability pension permanently reduced the monthly benefit that was subject to her share under the Marital Settlement Agreement to $3,249.81 per month, Husband did not dispute that the benefit when he reached his normal retirement age in 2022 would be reduced and argued only that the payments did not become retirement payments until September 1, 2022 and that he did not have a choice as to whether to take the benefits prior to retirement age. *Id.* at 21-29.

The documents to which Husband points as showing that his retirement pension payments are undiminished, the pension plan document, a September 28, 2022 Plan authorization converting Husband's disability retirement benefits to normal retirement benefits, and a September 28, 2022 letter, were not introduced in evidence at the hearing or submitted to the trial court and are not in the certified record in this case.[2] These documents therefore cannot be considered by this Court. *Commonwealth v. Young*, 317 A.2d 258, 264-65 (Pa. 1974); *PHH Mortgage Corp. v. Powell*, 100 A.3d 611, 614 (Pa. Super. 2014); *In re J.C.*, 5 A.3d 284, 288 (Pa. Super. 2010). Because the record does not show that the retirement benefits subject to the Marital Settlement Agreement were unaffected by his disability retirement and early

---

[2] Indeed, the latter two documents were not even in existence when this case was pending before the trial court, as they are dated two months after Husband filed this appeal.

receipt of pension benefits, this case is distinguishable from **Cioffi**, where the record was clear that the disability pension had no effect on the period or amount of pension benefits that the husband would receive when he reached retirement age.  885 A.2d at 50.

We nonetheless conclude that is necessary for the trial court to receive further evidence due to the absence of evidence in the record on the critical issue which determines whether the disability pension payments are subject to the Marital Settlement Agreement.  The deficiency in the record is substantially a result of Husband's failure to produce evidence to which he had greater access, and his testimony and failure to dispute that the disability retirement reduced the retirement benefit payments contributed to the trial court's decision.  However, vacating the order for the trial court to take and consider additional evidence which can clearly resolve the issue is appropriate given the continuing obligation imposed by the trial court's order, the terms of the order, and the fact that subsequent events have occurred that may have affected the correctness of the trial court's ruling.  Because the order requires payment to Wife of "40% of the marital portion of payments Husband receives from the Wilkinsburg Police Pension fund" in the future, Trial Court Order, 6/28/22, ¶1, not of 40% of the marital share of $3,249.81 per month, affirming the order in its entirety, without permitting Husband to demonstrate that there is in fact no reduction of the retirement benefits, would create the possibility of a double recovery for Wife of both the full amount of the

retirement pension benefits to which she is entitled under the Marital Settlement Agreement plus a share of benefits that she could receive only if the disability retirement had deprived her of those full retirement pension benefits.

We therefore vacate paragraphs 2 and 3 of the trial court's order and vacate paragraph 1 of the order to the extent that it applies to benefit payments prior to September 1, 2022. We remand this case to the trial court to permit the introduction of evidence concerning the monthly amount of the Normal Retirement Benefit to which Husband is entitled and which he is now receiving and for further determination, based on such evidence, whether Husband's disability pension benefits reduced his Normal Retirement Benefit and are therefore also pension benefits that are subject to the Marital Settlement Agreement. Because there is no dispute that the payments that Husband has received and is receiving from the Plan since September 1, 2022 are retirement benefits, Wife's right to 40% of the marital share of those payments will not be affected by such further evidence. We accordingly affirm paragraph 1 of the trial court's order as limited to payments on or after September 1, 2022.

Order affirmed in part and vacated in part. Case remanded for further proceedings. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>3/30/2023</u>