**Geraldine G. BUSCH, Appellee,**

v.

**Conrad H. BUSCH, Sr., Appellant.**

Superior Court of Pennsylvania.

Argued Jan. 27, 1999.

Filed June 1, 1999.

Reargument Denied Aug. 5, 1999.

Frederick R. Mogel, Reading, for appellant.

Randy A. Rabenold, Wyomissing, for appellee.

Before CAVANAUGH, EAKIN and OLSZEWSKI, JJ.

EAKIN, J.:

¶ 1
Conrad Busch filed a timely appeal,
trying to avoid a pre-marital deal
which says appellee need not pay him support;
he brings his case, properly, before this Court.

¶ 2
He seeks to reverse the alleged miscarriage
of enforcing the contract he signed ere the marriage.
Before we address how he grinds this ax,
we set out the trial court's findings of facts:

> This matter comes before the Court on Mr. Busch's (hereinafter "Husband") Petition for Special Relief to declare the parties' Pre–Nuptial Agreement invalid. Mrs. Busch (hereinafter "Wife") filed a Complaint in Divorce and Husband filed a counterclaim containing claims for equitable distribution, APL, and alimony. Wife filed an answer to the counterclaim and raised as a defense the Pre–Nuptial Agreement between the parties. Husband also filed a Complaint for Support, and again, Wife answered and raised the defense of the Pre–Nuptial Agreement. At the request of counsel, the matter was decided on deposition testimony and argument without hearing.
> Husband requested the Pre–Nuptial Agreement in order to protect wife from his encroaching upon her estate. Hus-

band was familiar with the concept of pre-nuptial agreements because he had such an agreement with his previous wife. Wife, on the other hand, was not familiar with pre-nuptial agreements because she never had one. Furthermore, she had never been through a divorce. On December 28, 1984 the parties executed their Pre–Nuptial Agreement. The Agreement was executed in a bank in Robesonia, and was witnessed by two bank employees. Execution of the Agreement came only after each party had the benefit of independent legal advice. Furthermore, at the time of the execution, the parties exchanged financial disclosure statements that were to be attached to the Agreement but, for whatever reason, were not so attached. These disclosure statements were prepared prior to the execution of the Agreement and were based on the parties' personal knowledge.

The financial disclosure statements were exchanged between the parties at or before the time of the execution of the Agreement.[1] In his deposition testimony, Husband testified that he did not know for sure how Wife came to have a copy of his statement, but it was possible that Attorney William Forry made a copy of his statement and gave it to Wife. He also testified that he did not care to have a copy of Wife's statement because he felt that he understood what it said. He was not personally aware of any particular items not disclosed. He said, "she is very precise, very good," when it comes to such matters.[1]

¶ 3

These factual findings are not in dispute— it isn't the facts appellant wants to refute. It's the legal conclusions he would have us eschew,
and therefore Busch sets forth for review:

1. Whether a pre-nuptial agreement which indicates that financial disclosures would be attached, but are not attached, constitutes full and fair disclosure?

2. Whether a handwritten statement, purported to be Wife's missing financial disclosure, can be construed to be full and fair disclosure of Wife's pre-marital estate if it (A) substantially undervalues various assets; (B) contains stale valuation dates; and (C) provides only a general description of stock assets without indicating the values of these assets or total value of the stock account and fails to mention certain assets?

¶ 4

No longer living in marital bliss,
Busch says the judge was reversibly amiss
for not overturning the pre-nup he signed
before he and his bride had their lives intertwined.

¶ 5

Our standard of review is a narrow one [2]—
is there an abuse of discretion in what was done?
Was there an error in the law's application,
or is this appeal mere financial frustration?

¶ 6

Appellant's mind may repose quite contented
for his arguments have been very ably presented,
but while both his issues are very well taken,
their premise, while arguable, we must find mistaken.

■ ¶ 7

A pre-nup's a contract, and the parties are bound
to honor its terms if disclosure is found
to include fair recital of what each one's got,
before it's put into the marital pot.

---

1. Trial Court Opinion, 5/6/98, at 1–2 (footnote omitted).

2. *Laudig v. Laudig*, 425 Pa.Super. 228, 624 A.2d 651, 653 (Pa.Super.1993) (citations omitted).

¶ 8

Full and fair the disclosure must be,
free of fraud or dishonesty.
Of this the parties had to agree
and set this out in paragraph three:

> The parties have made to each other a full and complete disclosure of the nature, extent and probable value of all their property and estate.

¶ 9

As the contract provides such disclosure occurred
it falls on appellant to do more than demur;
he's now got the burden to prove otherwise
by clear and convincing evidence, not surmise.[3]

¶ 10

The trial court in making its thoughtful decision
looked first to the testimonial deposition,
in which Busch admitted disclosure was made—
both he and his bride had a schedule to trade.

¶ 11

And trade them they did, though they were not appended
to the contract whose terms remained unamended.
But clearly appellant was given the chance to review hers, but chose not to give it a glance.

¶ 12

The first issue appellant has artfully hatched
relies on the fact no disclosures attached.
The pre-nup says otherwise, which appellant contends
means disclosure is not as the contract demands.

¶ 13

Busch claims non-attachment means her compilation
was lacking in contractual integration
making the contract voidable now;
this is a conclusion we cannot allow.

¶ 14

Busch wasn't concerned about his fiancee's possessions
for he knew her precision was near to obsession;
her summarization would be clear and precise,
so he chose not to read it, despite counsel's advice.

¶ 15

When offered the chance to look at her estate
Busch declined, which settles this issue's fate.
By doing so, he waived attaching the list—
the reference to exhibits need not even exist.

¶ 16

The issue is fairness; were things fully disclosed?
Clearly her assets were completely exposed,
so enforcing the contract we cannot prohibit
for mere want of a staple attaching an exhibit.

¶ 17

Wife listed all her stocks and other property,
and estimated what their value might be.
Now he says her figures were stale and too low,
their worth was much higher, and he'd the right to know.

¶ 18

This is true in so far as his reasoning goes,
but this right was waived, the moment he chose
not to look at her assets; in his blissful condition
he never relied on the list's composition.

¶ 19

Her listing of stocks and all the shares held
was on her disclosure, and Husband could tell
what they were worth, if he really cared,

---

3. *Simeone v. Simeone,* 525 Pa. 392, 581 A.2d 162, 165 (1990).

by opening the paper to see how they fared.

¶ 20

This contrasts with the *Ebersole* facts [4] as our case has something that *Ebersole* lacks.
There, a catch-all phrase lumped all the many
"financial assets" of the marriage, "if any".

¶ 21

This aggregation was too vague to be fair, as one couldn't tell what assets were there.
No matter how much Mr. Busch may implore us
this isn't the same as the contract before us.

¶ 22

In our case the assets were all clearly shown,
by the full list of holdings Mrs. Busch then owned.
So appellant's reliance on the *Ebersole* case,
while understandable, nonetheless is misplaced.[5]

¶ 23

Busch had been married before, so he knew
what a pre-nuptial contract's intended to do;
when taking this wife, (he'd been wed twice before),
it's certain appellant knew what was the score.

¶ 24

He'd had a pre-nup with his previous wife, and sought to avoid any mischief or strife
by asking his bride for a pre-nup himself, to allow her to insulate personal wealth.

¶ 25

They wanted to marry, their lives to enhance,
not for the dollars—it was for romance.
When they said "I do," had their wedding day kiss,
it was not about money—only marital bliss.

¶ 26

The trial court so learned was led to conclude
that appellant only seeks to undo
that which he wanted back in '84,
a deal which clearly he fancies no more.

¶ 27

But a deal is a deal, if fairly undertaken, and we find disclosure was fair and unshaken.
Appellant may shun that made once upon a time,
but his appeal must fail, lacking reason (if not rhyme).

¶ 28 Order affirmed.

general financial resources of the parties are not obscured"); *see also Gula v. Gula,* 380 Pa.Super. 249, 551 A.2d 324, 327 (1988) (full and fair disclosure does not require disclosure of the exact amount of party's assets, but enough to allow intended party to make informed decision).

---

4. *Ebersole v. Ebersole,* 713 A.2d 103 (Pa.Super.1998).

5. *See Hess v. Hess,* 397 Pa.Super. 395, 580 A.2d 357, 359 (1990) (full and fair disclosure requires a "reasonable estimate of the worth of the assets must be attempted so that the