J-S48001-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| WILLIAM R. HAGNER | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| SUSAN H. HAGNER, | : | |
| | : | |
| Appellant | : | No. 529 EDA 2018 |

Appeal from the Order Entered January 11, 2018
In the Court of Common Pleas of Chester County Domestic Relations at
No(s):  2011-13639

BEFORE:   DUBOW, J., MURRAY, J., and PLATT*, J.

MEMORANDUM BY DUBOW, J.:                          **FILED OCTOBER 03, 2018**

Appellant Susan H. Hagner ("Wife") appeals from the Decree granting the parties' divorce, specifically challenging the December 14, 2017 Order distributing the parties' property in accordance with their pre-nuptial agreement.   After careful review, we adopt the trial court's April 24, 2018 Opinion as our own, and affirm.

The parties are familiar with the facts of this prolonged litigation and we need not reiterate them in detail.  In sum, after a five-year courtship, the parties became engaged in May 1998.  Several weeks prior to the September 26, 1998 wedding, Appellee William R. Hagner ("Husband"), who is an attorney, provided Wife with a proposed prenuptial agreement as he had informed her for years that he would do if he ever married again.[1] Husband

_____

[1] This was Husband's second marriage and Wife's fourth marriage.

_____

*   Retired Senior Judge assigned to the Superior Court.

suggested that Wife review it with an attorney. At her request, Husband gave Wife the names of three family law attorneys, one of whom she consulted.

On the day of the wedding, Husband reminded Wife that they needed to execute the prenuptial agreement. When she suggested they sign it after the wedding, he stated that he would not get married until it was signed and would be amenable to postponing the wedding if she needed more time to consider the agreement. Wife then provided Husband with a copy of the agreement with handwritten revisions. Husband, in turn, modified Wife's modifications, and the parties ultimately reached agreement. They each signed the final prenuptial agreement and married later that day.

Thirteen years later, on December 14, 2011, Husband filed a divorce Complaint. Wife filed an Answer and Counterclaim. Much litigation ensued. Most relevant to this Appeal, Wife filed a Petition to Invalidate the Prenuptial Agreement and its amendments[2] on February 2, 2013. The trial court held a hearing on the Petition and found the prenuptial agreement to be valid and enforceable. The prenuptial agreement included the parties' waiver of their rights to equitable distribution. Wife appealed and this Court quashed the appeal as interlocutory.

_____

[2] According to Husband, during the marriage, the parties had twice modified the agreement. *See* Appellee's Brief at 2. According to the trial court, it did not need to consider the subsequent actions of the parties after it found that the agreement was valid and not reached through duress or misrepresentation. *See* Trial Ct. Op., dated 4/4/17, at 13. Wife has not raised any issue pertaining to the amendments in this appeal.

- 2 -

The matter proceeded to a hearing before Master Caren Morrissey, who issued a Report and Recommendation on April 26, 2017. Wife filed Exceptions. On December 14, 2017, the trial court denied Wife's Exceptions and entered an Order adopting the Report and Recommendation of the hearing master. On January 11, 2018, the court entered the Decree terminating the marriage.

Wife timely appealed. Both Wife and the trial court complied with Pa.R.A.P. 1925.

Wife raises the following issues for this Court's review:

1. Did the trial court err in not finding the prenuptial agreement invalid/voidable based on the totality of the circumstances and the evidence presented including but not limited to undue influence, duress and coercion on the day of wedding wherein Appellant's consult was with an attorney of Appellee's choosing, hence not independent, where Appellant was only given a copy of the prenuptial agreement three days before the wedding and shortly thereafter the parties left together for a "destination wedding" in North Carolina to which the parties had invited family and friends from out of state, including Appellant's elderly mother, making it practically impossible for Appellant to have a meaningful opportunity to review and/or revise the proposed prenuptial agreement and wherein Appellant's state of mind was significantly impacted due to the recent unexpected death of her son[?]

2. Did the trial court err in applying the "clear and convincing" burden of proof standard as opposed to the "preponderance of the evidence" burden of proof[?]

3. Did the trial court err in determining that items purchased by the parties during the marriage were not marital property when all items acquired during the marriage are presumed to be marital, Appellant testified in great detail as to the how, when and where of the purchases during the marriage, and Appellee failed to meet his burden to overcome this presumption[?] Further did the court err in determining Appellant had waived her right to the marital

property and non-marital property not listed on Schedule B as she suggested the monetary value as a reasonable alternative for distribution[?]

4. Did the trial court err excluding Appellee's income and in not awarding Appellant counsel fees when a Section 3702 claim under the Divorce code was properly raised in her counterclaim, a counsel fee claim was not precluded by the terms of the prenuptial agreement and an award was necessary to place the parties "on par"[?]

Wife's Brief at 5-6.

Each of Wife's issues challenge the trial court's finding that the parties' prenuptial agreement is valid and enforceable. The following well-settled standard of review applies:

> The determination of marital property rights through prenuptial, post[-]nuptial and settlement agreements has long been permitted, and even encouraged. Both prenuptial and post-nuptial agreements are contracts and are governed by contract law. Moreover, a court's order upholding the agreement in divorce proceedings is subject to an abuse of discretion or error of law standard of review. An abuse of discretion is not lightly found, as it requires clear and convincing evidence that the trial court misapplied the law or failed to follow proper legal procedures. We will not usurp the trial court's factfinding function.

*Paroly v. Paroly*, 876 A.2d 1061, 1063 (Pa. Super. 2005) (internal quotation marks, brackets, and citations omitted).

Wife also contests the trial court's property distribution, specifically challenging the credibility determinations underlying its disposition. "When reviewing the actions of a lower court in a divorce action, we are limited to a determination of whether there was an abuse of discretion. Although the master's report is entitled to great weight, the final responsibility of making

- 4 -

the [property] distribution rests with the court." **McNaughton v. McNaughton**, 603 A.2d 646, 648 (Pa. Super. 1992) (internal citations omitted). "Our review is thus based on the court's distribution of property." **Id**. However, even though a master's report and recommendation is only advisory, it "is to be given the fullest consideration, particularly on the question of credibility of witnesses, because the master ha[d] the opportunity to observe and assess the behavior and demeanor of the [witnesses]." **Childress v. Bogosian**, 12 A.3d 448, 456 (Pa. Super. 2011) (internal quotations and citations omitted).

The Honorable Ann Marie Wheatcraft filed a thorough Pa. R.A.P. 1925(a) Opinion, citing the certified record and providing a well-reasoned analysis of Wife's issues with reference to, and discussion of, dispositive authority. After careful review, we conclude the record supports the trial court's determinations. We discern no abuse of discretion or error of law. We, thus, adopt the court's April 24, 2018 Opinion as our own and affirm. **See** Trial Ct. Op., dated April 24, 2018 (finding, *inter alia*, that (1) Wife had the burden to show, by clear and convincing evidence, that the prenuptial agreement was the result of fraud, misrepresentation, or duress pursuant to principles applicable to contract interpretation; (2) Wife's testimony that she had only three days to review the agreement was not credible under the totality of the circumstances; (3) Wife received independent legal advice prior to signing the agreement; (4) enforcement of the prenuptial agreement did not trigger either

paragraph contained in the agreement allowing attorney's fees; (5) Wife's testimony regarding the expenditure of her own funds without receiving reimbursement to improve Husband's separate property was not credible; and (6) court properly distributed personal property of the parties based on the prenuptial agreement as well as Husband's more credible testimony and post-trial memorandum).

The parties are instructed to annex the trial court's April 24, 2018 Opinion to all future filings.

Decree affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 10/3/18

WILLIAM R. HAGNER     :     IN THE COURT OF COMMON PLEAS

                      :     CHESTER COUNTY, PENNSYLVANIA

                      :

       v.               :

                      :     NO. 2011-13639-DI

                      :

SUSAN H. HAGNER       :     529 EDA 2018

William R. Hagner, Esquire, *Pro Se* Appellee
Lynn A. Snyder, Esquire for Appellant

J. WHEATCRAFT                              APRIL 24th, 2018

### 1925(a) Opinion

Susan Hagner ("Appellant") filed an appeal of this court's December 14, 2017 Order and Opinion wherein we accepted the Divorce Master's recommendation for property distribution. A Decree of Divorce was issued January 11, 2018. Appellant filed her Notice of Appeal on February 8, 2018 and we issued a Rule 1925(b) Order on February 14, 2018. Appellant filed her Concise Statement of Errors on March 6, 2018 setting forth the following complaints: (1) The court erred in finding the Pre-Nuptial Agreement valid; (2) The court erred in not permitting testimony from Appellant regarding her son's death as it related to her state of mind at the time of executing the Pre-Nuptial Agreement; (3) The court erred in using the clear and convincing evidence burden of proof; (4) The court erred in relying upon out of court documents that were not part of the record; (5) The court erred in accepting testimony about Appellant's prior divorces; (6) The court erred in preventing testimony from Appellant regarding statements made by Appellee to a third party; (7) The court erred in allocating as separate property the personal property purchased during the marriage; (8) The court erred in accepting Appellant's failure to take possession of property as a waiver of that

property; and (9) The court erred in not awarding Appellant attorney's fees. We find no errors were made.

## PROCEDURAL BACKGROUND

The parties entered into a Pre-Nuptial Agreement on September 26, 1998 in Manteo, North Carolina and got married that same day. It was a second marriage for Appellee and a fourth marriage for Appellant. At all times pertinent hereto, the parties were residents of Chester County, Pennsylvania. Presently, Appellant is 67 years of age and Appellee is 72 years of age.

The parties agree that their date of separation is December 14, 2011; the date Appellee filed the Complaint in divorce. On February 24, 2012, Appellant filed an Answer and Counterclaim requesting relief in the form of equitable distribution, counsel fees, and alimony. Intense and lengthy litigation followed. We refer the Appellate court to Master Caren Morrissey's Recommendation, pp. 2-3 for a brief history of the litigation between the parties.

For purposes of this appeal, we note that Appellant filed a Petition to Invalidate the Pre-Nuptial Agreement and its Amendments on February 1, 2013. After an evidentiary hearing, we found the Pre-Nuptial Agreement to be valid. In the Pre-Nuptial Agreement, the parties mutually waived their right to equitable distribution. Appellant appealed our determination. However, the Superior Court quashed the appeal as interlocutory. (*See Hagner v. Hagner*, 606 EDA 2013).

The matter proceeded to a hearing before Master Morrissey. After a protracted hearing, the master issued a Report and Recommendation on April 26, 2017. Appellant filed twenty-two (22) Exceptions on May 16, 2016. After considering argument by the parties, reviewing the briefs submitted by the parties, and an independent review of the

record, we denied Appellant's Exceptions. (*See* Order and Opinion, 12/14/17). Appellant filed a timely Appeal and Concise Statement of Errors on February 8, 2018.[1] Our Rule 1925(b) Opinion follows.

## ISSUES PRESENTED BY APPELLANT

Defendant sets forth fourteen (14) errors of law or abuses of discretion. For the purposes of analysis and discussion we address Plaintiff's claims as seven (7) errors:

1) The court erred in finding the Pre-Nuptial Agreement valid;

2) The court erred in relying upon out of court documents, the Addendums to the Pre-Nuptial Agreement, that were not made part of the record;

3) The court erred in considering Appellant's past marital history when examining whether Appellant was under duress when executing the Pre-Nuptial Agreement.

4) The court erred in allocating as Appellee's separate property the personal property purchased during the marriage for use at Appellee's rental properties;

5) The court erred in allocating as Appellee's separate property the personal property purchased during the marriage and retained at 4724 Roanoke Way (marital residence).

6) The court erred in accepting Appellant's failure to take possession of property as a waiver of that property; and

7) The court erred in not awarding Appellant attorney's fees.

---

[1] The court issued its Order and Opinion on December 14, 2018. However, we failed to enter the decree of divorce until January 11, 2018. The Order in question did not become final until January 11, 2018. Appellant's Appeal was timely filed on February 8, 2018.

## DISCUSSION

### A. Standard of Review

The standards of review with regard to the errors claimed by Appellant are as follows:

#### 1. Review of a Pre-Nuptial Agreement's Validity

A trial court's order upholding the validity of a pre-nuptial agreement is subject to an abuse of discretion or error of law standard of review. *Estate of Kendall*, 982 A.2d 525 (Pa.Super. 2009) (citing *Busch v. Busch*, 732 A.2d 1274, 1276 (Pa.Super. 1999), *appeal denied*, 760 A.2d 850 (Pa. 2000)). It is not proper to usurp the trial court's fact-finding function and an abuse of discretion is not lightly found. *Laudig v. Laudig*, 624 A.2d 651, 653 (Pa.Super. 1993). An abuse of discretion finding requires clear and convincing evidence that the trial court misapplied the law or failed to follow proper legal procedures. *Paulone v. Paulone*, 649 A.2d 691 (Pa.Super. 1994).

#### 2. Interpretation of a Pre-Nuptial Agreement

Pre-nuptial agreements are examined under the principles of contract law. *Simeone v. Simeone*, 581 A.2d 162, 165-66 (Pa. 1990). Contract interpretation is a question of law. The standard of review over questions of law is de novo. The entire record may be reviewed. *Kraisinger v. Kraisinger*, 928 A.2d 333 (Pa.Super. 2007).

#### 3. Property Distribution Pursuant to a Pre-Nuptial Agreement

A court's property distribution order implementing a valid pre-nuptial agreement in divorce proceedings is subject to an abuse of discretion or error of law standard of review. *Sabad v. Fessenden*, 825 A.2d 682, (Pa.Super. 2003), *appeal denied* 836 A.2d 122, (Pa. 2003). Again, an abuse of discretion finding requires clear and convincing

evidence that the trial court misapplied the law or failed to follow proper legal procedures. *Paulone*, supra.

### B. Errors Claimed by Appellant

#### 1. The Court Erred In Finding The Pre-Nuptial Agreement To Be Valid And Enforceable.

Appellant makes three claims to support her position that the court erred in finding the Pre-Nuptial Agreement enforceable. First, that the court erroneously placed upon her the "clear and convincing" burden to show duress. (Appellant's Concise Statement Par. 6). Appellant's second argument is that the court failed to find the agreement was executed under duress, misrepresentation, or fraud. (Appellant's Concise Statement Pars. 2-4). Appellant's last argument related to the Pre-Nuptial Agreement is that the court erred in preventing her from presenting further evidence related to her state of mind as a result of her son's death at the time she executed the agreement. We find no errors.

#### a. Burden of Proof

Appellant argues that the court erred in placing a "clear and convincing" burden upon her to show duress. The agreement in question is a pre-nuptial agreement executed on September 28, 1998. It contains a provision acknowledging there was full and fair disclosure (Exh. D-3, par. II, p. 2), and Appellant does not submit that there was a failure to make a full and fair disclosure by Appellee. As a result, Appellant has the burden to show, by clear and convincing evidence, that the Pre-Nuptial Agreement was executed as a result of fraud, misrepresentation, or duress. *Porreco v. Porreco*, 571 Pa. 61, 811 A.2d 566 (Pa. 2002) (Pre-nuptial agreements are contracts and are evaluated under the same criteria applicable to other types of contracts). Appellant cannot escape

her legal burden to prove her claim of fraud, misrepresentation, or duress by clear and convincing evidence, *Busch v. Busch*, 732 A.2d 1274 (Pa.Super. 1999), and we find no error in doing so.

### b. Fraud, Misrepresentation, or Duress

Appellant asserts she was under duress when she executed the Pre-Nuptial Agreement and makes the following factual assertions in support of her claim:

i.  She was only given a copy of the Pre-Nuptial Agreement three (3) days before the wedding. (Appellant's Concise Statement, Par. 2).

ii.  The only opportunity she had to consult with an attorney was three (3) days before the wedding. This time constraint prohibited her from participating in an "in depth" review of the agreement with the attorney, and did not allow her the opportunity to negotiate terms. (Appellant's Concise Statement, Pars. 3-4).

iii.  She was in a vulnerable state of mind due to her 29 year old son's recent death. (Appellant's Concise Statement, Par. 4).

A hearing addressing the validity of the Pre-Nuptial Agreement was held on January 14, 2015. At that time, Appellant stated that she challenged the Pre-Nuptial Agreement on the grounds of "undue influence[,] ... misrepresentation[,] and the validity of the legal review" of the Pre-Nuptial Agreement. (N.T., 01/14/13, p. 4, ll. 6-9). Upon reviewing Appellant's Concise Statement, we find she makes much the same arguments for purposes of this Appeal. In determining whether the Pre-Nuptial Agreement was valid, we considered the following credible and persuasive testimony:

- Appellee is an attorney by profession. He has practiced law since 1975. (N.T., 01/14/13, p. 18).

- The parties began dating in 1995 and began living together shortly thereafter. They were engaged in May 1998 and then married on September 26, 1998. *Id.*

- Appellee obtained his divorce from his first wife and was dating Appellant in 1995. At that time, Appellee discussed his intention to have a pre-nuptial agreement in place should he consider ever marrying again. *Id.* at p. 19, l. 16 – p. 20, l. 2). Appellee next recalls specifically bringing up the subject of a pre-nuptial agreement in May 1998 when he and Appellant became engaged. *Id.* at p. 20, ll. 13-21.

- Appellee described Appellant's reaction to the pre-nuptial agreement discussions to be one of understanding. He cannot recall Appellant ever indicating to him that she would be opposed to a pre-nuptial agreement. *Id.* p. 20, l. 22 – p. 21, l. 1, ll. 2-7

- Appellee drafted the Pre-Nuptial Agreement at the end of August 1998 and gave it to Appellant the first week of September 1998. *Id.* at p. 21, ll. 16-23. He advised her to have it reviewed by an attorney and provided the names of three attorneys. *Id.* at p. 22, l. 16 – p. 23, l. 8.

- Appellant called Joseph P. DiGiorgio, Esquire, one of the three attorneys provided by Appellee, to set up an appointment. Mr. DiGiorgio has been practicing marital law, including the drafting and reviewing of pre-nuptial agreements, since 1978. Appellant informed him she needed legal counsel regarding a pre-nuptial

agreement drafted by her husband, Appellee.

- Mr. DiGiorgio testified he was aware that Appellee was a local attorney and informed Appellant that he would be calling Appellee before confirming an appointment.

- Mr. DiGiorgio testified that he wanted to make sure there would be no hard feelings on Appellee's part should it be necessary that he advise Appellant against the agreement drafted by Appellee. *Id.* at p. 7, l. 10 – p. 8, l. 22; Exh. D-1, 10/22/13, Dep., p. 15, ll. 19-25.

- Appellee indicated to Mr. DiGiorgio that he wanted him to provide Appellant with the best service possible. *Id.* Mr. DiGiorgio testified that:

> The gist ... of the conversation was [that Appellee] had given [Appellant] some names. Mine was one of them. [Appellee] had every confidence that I would be able to – be willing to assist her competently doing that. No problem from that standpoint. And that was the end of the conversation. There was no discussion about any provisions of the agreement.

(N.T., 01/14/13, p. 10, ll. 1-7).

- Mr. DiGiorgio testified that it is his usual procedure to request that the agreement to be reviewed be dropped off to him ahead of the appointment. He cannot recall if that actually occurred before Appellant's appointment on September 23, 1998. He no longer retains an independent recollection of his meeting with Appellant. *Id.* at p. 10, l. 20 – p. 11.

- Mr. DiGiorgio stated that it is his:

  [S]tandard operating procedure to explain the ramifications of the provisions that [are] presented, including whether or not there [is] an adequate provision for support, alimony, spousal support or alimony [*pendent lite*[2]], and then, of course, any equitable distribution provisions. ... [he doesn't] recall ever having spent less than an hour reviewing an agreement. (Exh. D-1, 10/22/13, Dep., p. 13, ll. 14-24).

- Mr. DiGiorgio stated that after reviewing the agreement, he wanted to make sure that Appellant's housing was covered and he inserted the paragraph beginning with "The parties" and ending with "upon separation" is his writing on the page after the notary page. (Exh. D-1, 10/22/13, Dep., pp. 12-13).

- The cross-outs of his writing and notations below that paragraph are not his writing. At the time he wrote the paragraph, there was nothing else written on that page. *Id.*

- Appellant recalls spending approximately an hour with Mr. DiGiorgio reviewing the Pre-Nuptial Agreement. (N.T., 01/14/13, p. 62, ll. 5-7).

- Mr. DiGiorgio's records reflect that Appellant remitted a $250.00 payment for his consultation. (N.T., 01/14/13, p. 12, ll. 1-5). Appellant had one consultation with Mr. DiGiorgio. *Id.* at p. 61, ll. 22-25. He did not have any further contact with Appellant. (Exh. D-1, 10/22/13, Dep., p. 16).

- Appellant recalls leaving for the wedding destination in North Carolina on

---

[2]  Mr. DiGiorgio stated that line 19 of p. 13 of the Deposition required a correction to read "alimony pendent lite." (N.T., 01/14/13, p. 6, ll. 3-16).

Wednesday, September 23, 1998 or Thursday, September 24, 1998. The wedding took place on Saturday, September 26, 1998. (N.T., 01/14/13, p. 25, ll. 2-15). During the drive to North Carolina, Appellee recalls discussing the Pre-Nuptial Agreement. At no time during the commute did Appellant indicate she was not going to sign the agreement or was opposed to anything in the agreement. *Id.* at p. 34, l. 18 – p. 35, l. 3.

- The Pre-Nuptial Agreement was signed by Appellant on Saturday, September 26, 1998. Appellant had requested that they wait until later to sign the agreement, but Appellee informed her that the wedding would be postponed until the agreement was signed. Appellee refused to get married without the Pre-Nuptial Agreement being signed. *Id.* at p. 25, l. 23 - p. 27, l. 17.

- Appellant presented the Pre-Nuptial Agreement to Appellee with modification before the wedding on September 26, 1998 between 12:00 p.m. and 1:00 pm. The wedding was to take place before dusk that day. *Id.* at p. 35, ll. 18 – p. 16, l.3.

- The record reflects that the modifications to the Pre-Nuptial Agreement that were made by Appellant and accepted by Appellee were as follows:
    - Deletions made to Par. V.A.(1)(c) (Exh. D-3, p. 4; N.T., 01/14/13, p. 37, ll. 15-20);
    - Additional hand written language, "opened or originated". (Exh. D-3, p. 5; N.T., 01/14/13, pp. 38-40);
    - Deletion of Pars. VI.F.(6)-(9), additional hand written language on top of page 6, and additional hand written language to Par. VI.F(10) and Par. VI.G.(1). (Exh. D-3, p. 6; N.T., 01/14/13, pp. 38-40);
    - Additional hand written language at the bottom of page 10, "as written" (Exh. D-3, p. 10; N.T. 01/14/13, p. 41, ll. 16-17); and

- o Additional hand written language below the hand written paragraph penned by Mr. DiGiorgio. (Exh. D-3, p. 11; N.T., 01/14/13, p. 43, ll. 3-7).

- Appellant lost her son in June 1998. Appellee found Appellant to be doing fine at the wedding even in light of this loss, although he was surprised that she wanted to get married the September immediately following his death the prior June. (N.T., 01/14/13, pp. 31-33).

After careful consideration of the evidence and testimony presented, we did not find that Appellant was rushed, coerced, or manipulated into executing the Pre-Nuptial Agreement. (N.T., 01/14/13, pp. 64-70). Appellant admits that she and Appellee discussed pre-nuptial agreements in July and August of 1998. We found Appellee credible in his testimony that he made his intention to never marry without a pre-nuptial agreement clear to Appellant during their engagement. *Id.* at p. 74, l. 25 – p. 75, l. 5. We also found Appellant's testimony that she only had three (3) days before the wedding to consider the Pre-Nuptial Agreement to be implausible given the sequence of events: Appellant's receipt of the Pre-Nuptial Agreement; Mr. DiGiorgio receiving a phone call from Appellant; Mr. DiGiorgio speaking with Appellee prior to scheduling an appointment, and Mr. DiGiorgio calling Appellant back to schedule an appointment. It is axiomatic that Appellant had the Pre-Nuptial Agreement more than three days prior to the wedding.

We also determined that Mr. DiGiorgio was not influenced by Appellee. We found the testimony from Mr. DiGiorgio and Appellee credible that Appellant was given more than one referral by Appellee. Appellant was free to choose from the three referrals given or use one of her prior divorce attorneys. Further, we emphasize that we found

Mr. DiGiorgio very credible in his testimony that he provided his best legal advice without any consideration to outside influences.

Appellant's contention that she was inhibited by Appellee from negotiating the terms of the Pre-Nuptial Agreement is also without merit. The Pre-Nuptial Agreement was modified by both competent counsel and Appellant. Therefore, Appellant had a full opportunity to negotiate terms and consider counter terms.

And last, we find Appellant's contention that she was in a vulnerable state of mind due to her 29 year old son's recent death to be overstated. Appellant showed firmness of mind by making her own changes to the Pre-Nuptial Agreement.

### c. Limitation on Evidence Presented

Appellant submits that it was error for the court to prevent her from presenting further evidence related to her vulnerable state of mind at the time she executed the Pre-Nuptial Agreement due to her son's death. Her claim is not supported by the record.

Appellant was afforded ample opportunity to present evidence related to her state of mind. While there were objections made by Appellee's counsel to questions related to her son's death, these objections were overruled by the court. Only objections to the form of the questions were sustained by the court. (N.T., 01/14/13, pp. 67-69, 85-86). On re-direct examination of Appellant, Appellant was again questioned about her son's death. An objection was made as 'asked and answered' during Appellant's direct testimony. Prior to the court making its ruling on the objection, the question was withdrawn by Appellant's counsel. *Id.* at p. 90, ll. 6-21. The court did not place any limit upon Appellant or her counsel to present further evidence as to Appellant's state of min. Consequently, Appellant was free to present any evidence she wished.

After considering all the evidence presented and Appellant's claims of error

related to the Pre-Nuptial Agreement, we continue to find that Appellant failed to meet her burden, by clear and convincing evidence, that she entered into the Pre-Nuptial Agreement under duress. We see no error in finding the Pre-Nuptial Agreement valid and enforceable. *Lessner v. Rubinson*, 400, 592 A.2d 678, 681 (Pa. 1991); *see also Carrier v. William Penn Broadcasting Co.*, 233 A.2d 519 (Pa. 1967); *Hamilton v. Hamilton*, 591 A.2d 720 (Pa.Super. 1991).

## 2. The Court Erred In Relying Upon Out Of Court Documents That Were Not Part Of The Record

Appellant argues that the court erred in considering the two Addendums to the Pre-Nuptial Agreement in finding the Pre-Nuptial Agreement valid when the Addendums were not entered into evidence. (Appellant's Concise Statement, Par. 7). Appellant is correct that the two Addendum documents referenced in the record were not entered into evidence. However, Appellant misreads the court's February 1, 2013 Order. We specifically stated:

> As we find no duress and no misrepresentation related to the agreement, there is no need to make a final determination as to ... whether subsequent actions [, i.e. the execution of Addendums] demonstrate [Appellant's] intention to affirm the voidable contract.

(Order, 02/01/14, FN, p.2). The Pre-Nuptial Agreement Addendums were not considered in our determination that the agreement was valid and there is no error.

3. **The Court Erred In Considering Appellant's Past Marital History When Examining Whether Appellant Was Under Duress When Executing The Pre-Nuptial Agreement.**

Appellant submits that it was error to consider her past marital/divorce history when examining the issue of duress. We find this argument to have little merit. Duress is defined as "[t]hat degree of restraint or danger, either actually inflicted or threatened and impending, which is sufficient in severity or apprehension to overcome the mind of a person of ordinary firmness." *Adams v. Adams*, 414 Pa.Super. 634, 607 A.2d 1116, 1119 (Pa.Super. 1992), see also *Strickland v. University of Scranton*, 700 A.2d 979, 986 (Pa.Super. 1997), *citing Smith v. Lenchner*, , 205 A.2d 626, 628 (Pa.Super. 1964). In order to evaluate whether the definition of duress is met, an examination of all the circumstances surrounding the execution of the contract must be considered, including Appellant's past life experiences. It was appropriate for the court to consider Appellant's level of anxiety, the availability of counsel, and her prior experience with seeking and obtaining counsel. This is of special concern when the courts have found that a party who has a reasonable opportunity to consult with counsel before entering a contract cannot later invalidate it by claiming duress. *Degenhardt v. The Dillon Co.*, 669 A.2d 946 (Pa. 1996). Consequently, we find no error in considering Appellant's past marital/divorce history. (N.T., 01/14/13, pp. 75-80).

4. **The Court Erred In Allocating The Personal Property Purchased During The Marriage For Use At The North Carolina Rental Properties As Appellee's Separate Property.**

It is Appellant's general contention that personal property purchased during the marriage and used in the Appellee's rental North Carolina properties are not governed

by the Pre-Nuptial Agreement. She submits that it was error for the court to find this property to be successor replacement property in light of the testimonial evidence she provided. (Appellant's Concise Statement, Par. 10). We disagree.

The property purchased during the marriage which is traceable as replacement property is not marital property. The Pre-Nuptial Agreement is clear in its directive that any replacement property, even if purchased during the marriage, remains non-marital for purposes of distribution at the time of divorce. (Exh. D-1, p. 5, par. VI.A., Schedule "A").

We did not find Appellant's testimony that she used her own funds to acquire personal property for the rental properties during the marriage without reimbursement from Appellee to be credible. We found that any expenditures made by Appellant for personal property retained at the rental properties were reimbursed to her or paid by Appellant. We found Appellee's testimony that all purchases, including but not limited to furniture and appliances, were made as part of his rental investment to be more credible. (N.T., 12/12/16, pp. 90-91). Appellant's argument that because she purchased items for the rental properties during the marriage that they are automatically marital property to have little merit and is not supported by the record. Accordingly, we find no error.[3]

### 5. The Court Erred In Allocating As Appellee's Separate Property The Personal Property Purchased During The Marriage And Retained At 4724 Roanoke Way (The Marital Residence).

It is Appellant's position that the court erred in not returning all of the personal

---

[3]  A full examination of Appellant's claim for separate and marital property is set forth, to the best of this court's ability, in our December 14, 2017 Order and Opinion (Order & Opinion, 12/14/17, pp. 4-6, 8), as well as the detailed analysis made by master Morrissey in her Report and Recommendation. (Report & Recommendation, 04/26/17, pp. 5, 8-12).

property requested and/or awarding the monetary value of those items claimed to be marital property located at the Roanoke Way property. The record is at best ambiguous as to what property Appellant claims to be marital. We found her testimony on this matter to be confusing, contradictory, and unreliable. We concurred with the master's determination that the personal property that should be returned to Wife was credibly listed in Appellee's Post Trial Memorandum, Conclusion (D). Furthermore, we found that the additional items not listed by Appellee were either non-marital or if marital, the values given by Appellant for those items were unrealistic. We determined that Appellant failed to provide persuasive and credible evidence related to her claim for the distribution of personal property. We find no error in awarding the items pursuant to Appellee's Post Trial Memorandum, Conclusion (D) that were found to be more credible and disregarding Appellant's submissions. We direct the Superior Court to our Order and Opinion of December 14, 2017 for an explanation as to the personal property distributions made. (Order & Opinion, 12/14/17, pp. 4-6, 8).

6. **The Court Erred In Accepting Appellant's Failure To Take Possession Of Personal Property As A Waiver Of That Property**

Appellant submits that it was error for the court to find waiver of her personal property due to her refusal to take possession. The master found, and we agreed, that the parties' estimated values for the marital property were significantly inflated making exact money distributions in place of returning the property impossible. Under the facts presented in this matter, Appellant's refusal to take the property, and unreliable evidence, submitted by both parties, as to the value of that property, we determined that it was appropriate to find such property waived by Appellant both due to her relinquishing possession and there being no credible values presented. (See Order and

Opinion, 12/14/17, Master's Report & Recommendation, 04/26/17).

### 7. The Court Erred In Not Awarding Appellant Attorney's Fees.

Appellant submitted that she is entitled to attorney's fees pursuant to the provisions of the Pre-Nuptial Agreement. (N.T., 12/12/16, p. 10, l. 17). Two paragraphs in the Pre-Nuptial Agreement address attorney's fees. Paragraph VII.C. addresses the fees and costs when court intervention is requested to modify or invalidate the Pre-Nuptial Agreement (Exh. D-1, p. 8), and paragraph XI.C.(4) addresses the fees and costs when court intervention is requested to asses a breach of the PNA. (Exh. D-1, p. 10). We do not find that enforcement of the Pre-Nuptial Agreement in this divorce action triggers either paragraph. Even if we were to interpret Appellant's claim for equitable distribution as a "modification" of the terms of the Pre-Nuptial Agreement, Appellant did not prevail in her claim to invalidate the agreement. As a result, she is not entitled to attorney's fees. Additionally, Appellant's claim that the distribution made by this court is erroneous is not a finding that Appellee breached the agreement. Appellant is not entitled to attorney's fees. Therefore, we find no error.

### CONCLUSION

For the foregoing reasons, the Court respectfully requests that it's December 14 2017 Order and Opinion be AFFIRMED.

BY THE COURT:

_____
Ann Marie Wheatcraft,                 J.